EASTERN MISSOURI LABORERS
DISTRICT COUNCIL, et al.,
Plaintiffs–Appellants,

v.

ST. LOUIS COUNTY, Missouri, et al.,
Defendants–Respondents.

John BRAWLEY, et al.,
Plaintiffs–Appellants,

v.

Gene McNARY, et al.,
Defendants–Respondents.

Nos. 71633, 71654.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

As Modified on Denial of Rehearing
Dec. 12, 1989.

Jerald A. Hochsztein, Bruce S. Feldacker, St. Louis, for Eastern Missouri Laborers District Council.

Robert H. Grant, Deputy County Counselor, Andrew J. Minardi, Patricia Redington, Associate County Counselors, Thomas W. Wehrle, St. Louis County Counselor, Clayton, for St. Louis County.

J. Peter Schmitz, Robert O. Snyder, Mark A. Brittingham, St. Louis, for John Brawley et al.

Andrew J. Minardi, Associate County Counselor, Thomas W. Wehrle, St. Louis County Counselor, Clayton, for Gene McNary et al.

Gregory F. Hoffmann, St. Louis, for J.S. Alberici Const. Co. Inc.

Shulamith Simon, St. Louis, for Riverport, Inc. and Riverport Assocs.

BILLINGS, Judge.

Two cases originating in St. Louis County contested the alleged illegal expenditures of public funds. The trial court sustained a motion to dismiss in the *Eastern Missouri Laborers District Council* case. In *Brawley v. McNary*, the trial court found the taxpayer plaintiffs lacked standing to bring suit, although it heard evidence and ruled the issues. The court of appeals found the respective plaintiffs lacked standing. The cases were consolidated for transfer and argument before this Court in order to clarify Missouri's law on taxpayer standing. The Court finds plaintiffs in each case have standing to bring suit as taxpayers. The *Eastern Missouri Laborers* case is reversed and remanded. The *Brawley* case is retransferred to the court of appeals for resolution of the issues.

In *Eastern Missouri Laborers District Council, et al., v. St. Louis County, Missouri, et al.,* the Court accepts as true all properly pleaded facts, giving the averments a liberal construction, and making reasonable inferences therefrom. *Madden v. C & K Barbecue Carryout, Inc.,* 758 S.W.2d 59, 61 (Mo. banc 1988); *Stiffelman v. Abrams,* 655 S.W.2d 522, 525 (Mo. banc 1983). With these tenets in mind, the facts are set out below.

A petition was filed in St. Louis County Circuit Court by St. Louis Minority Contractors, Inc., requesting an injunction prohibiting the performance of a contract entered into by the County. The petition alleged that the County violated § *50.660, RSMo 1986,* and *St. Louis County Revised Ordinance 107.130* by failing to use competitive bidding in selecting a construction manager for the remodeling of County office buildings. A second petition was filed as a class action by the Eastern Missouri Laborers District Council and by two of its officers individually as taxpayers. This petition requested the construction manager contract and a second contract for the removal of asbestos be enjoined, and that the named individual defendants personally reimburse the County treasury for any payments made under either contract.

Plaintiffs' petition alleges that late in 1987 or early 1988, the County invited four previously selected contractors to submit bids to perform renovation work on recently purchased buildings at 111 S. Meramec in Clayton, Missouri. The County intended to use the renovated buildings for offices and functions that were located elsewhere. The County did not advertise the contract for competitive bids and did not seek a prevailing wage determination from the Division of Labor Standards for the State of Missouri prior to inviting the companies to submit bids.

The County selected defendant Alberici from the four bidders to perform the services of construction manager. Those services included construction, supervision and solicitation of bids from subcontractors and, subsequent to review by the County, authorizing the subcontractors to proceed with various phases of work on the project. The contract price was for a fixed amount of $2,226,000. Alberici is a Missouri corporation engaged in the construction of commercial and other buildings, within and outside the state of Missouri.

Plaintiffs' petition also alleged the County entered into a $60,000 contract with Mathes Asbestos Services, Inc., to remove asbestos from the buildings in issue. This contract was also awarded without advertising for competitive bids or requesting prevailing wage determinations. On February 12, 1988, plaintiffs notified the County in writing that the contract for asbestos removal was in violation of §§ *50.660 and 290.250, RSMo 1986,* and *Title I, Chapter 107 of the St. Louis County Revised Ordinances 107.130 (1974),* regulating competitive bidding practices. The letter informed the County that the asbestos contract was void under the law and any payment on the contract could not be made with county funds. The letter gave defendants notice they would be held personally liable for any such payments.

Missouri's Division of Labor Standards issued a prevailing wage determination for

the renovation of the buildings in issue on March 1, 1988. Plaintiffs notified the County on March 29, 1988, that in addition to receiving the prevailing wage determination, the construction manager contract needed to be let for competitive bidding. On April 7, 1988, the County Council authorized the contract for construction manager services with Alberici. Plaintiffs allege that although the wage determination was received before the contract was officially authorized, the parties had committed themselves before receipt of the wage determination.

Motions to dismiss were filed by the County and by Alberici. Both motions were sustained. The court of appeals affirmed the trial court's judgment, finding that the petition failed to state a claim for which relief could be granted and holding that the plaintiffs lacked standing to bring suit.

*John Brawley, et al. v. Gene McNary, et al.,* centered around the County's use of funds appropriated from the St. Louis County Convention and Tourism Fund to purchase 102 acres of land on which to build a domed stadium. Additional moneys were also appropriated by the County from the Transportation Trust Fund for construction of a flood control system near the 102-acre site. Plaintiffs allege the appropriations of these funds were illegal.

From 1976 until 1984, St. Louis County collected a 3% tourism tax based on charges for hotel and motel rooms in the county. The tax, paid by transient guests of the hotels and motels, went into the "Convention and Tourism Fund" established by county ordinance in 1975. The fund's purpose was to adopt plans, policies and programs to promote the convention and tourism business. The county discontinued the tax when it was superseded by § *67.619.5(2), RSMo 1986.*

On November 26, 1985, the St. Louis County Council passed a series of four ordinances pertaining to the funds in issue. The first ordinance declared that the funds remaining unexpended in the St. Louis County Convention and Tourism Fund were no longer needed for the purpose for which they were raised. One million dollars was then transferred from the fund into the County's General Revenue Fund. The second ordinance appropriated $1,000,000 from the General Revenue Fund to the Special Projects Account, which would be used to purchase the 102-acre site for the stadium from Riverport, Inc. The next ordinance appropriated $3,000,000 from the Transportation Trust Fund and transferred it to the Transportation Highway Fund for contribution to the construction of the flood control system in the area around the proposed stadium. The Transportation Trust Fund is a special fund generated from a sales tax of one half of one percent of the receipts of all county retail sales of tangible personal property or taxable services. The final ordinance authorized County Executive Gene McNary to purchase the land from Riverport, Inc., for $1,000,000 and authorized the County to use up to $3,000,000 to construct a levee, relief wells and pumping station for flood protection of the Earth City Expressway, the stadium and related facilities.

Plaintiffs filed a petition as taxpayers seeking an injunction against the defendants from going forward with their plans. They also sought the imposition of a "constructive trust" on the 102-acre tract bought pursuant to the ordinances and an equitable lien upon the remaining property owned by defendant Riverport, Inc., benefitted by the construction. The defendants asserted plaintiffs lacked standing to file the petition. Nevertheless, the trial court heard the case on its merits. The lower court found the plaintiffs lacked standing but also made findings of fact and conclusions of law on all the issues presented at trial. Plaintiffs appealed the trial court's judgment and the court of appeals affirmed solely on the basis of standing. Relying on *Brock v. City of St. Louis,* 724 S.W.2d 721 (Mo.App.1987), the court stated plaintiffs failed to show any special injury, in the form of an increase in their tax burden, and therefore lacked standing.

■ The Court must initially review these cases on the taxpayer standing issue. Regardless of an action's merits, unless the

parties to the action have proper standing, a court may not entertain the action. *State ex rel. Williams v. Mauer*, 722 S.W.2d 296, 298 (Mo. banc 1986). Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or actual injury. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 400 (Mo. banc 1986).

■ The right of a taxpayer, on behalf of himself and other taxpayers similarly situated, to bring an action to enjoin the illegal expenditure of public funds cannot be questioned. *Everett v. County of Clinton*, 282 S.W.2d 30, 35 (Mo.1955); *See also Newmeyer v. Missouri & Mississippi Railroad Co.*, 52 Mo. 81, 89 (1873); 74 Am. Jur.2d, *Taxpayers' Actions, § 1*, (1974). However, the mere filing of a lawsuit does not automatically confer standing on a taxpayer. *Bopp v. Spainhower*, 519 S.W.2d 281, 286 (Mo. banc 1975); *Spencer v. City of De-Kalb*, 408 S.W.2d 78, 81 (Mo.1966). In ruling on the two cases now before the Court, the Court must determine the proper test for conferring taxpayer standing when an unlawful expenditure of public funds is alleged.

The court of appeals in *Brock v. City of St. Louis*, 724 S.W.2d 721 (Mo.App.1987), held that an allegation of illegal or unconstitutional spending of public funds, in and of itself, is not enough to confer taxpayer standing and plaintiffs must also show special injury. The pleadings and evidence must show that a loss of revenue is a necessary result. *Brock v. City of St. Louis*, 724 S.W.2d at 725. This requirement of pleading and proving a loss of revenue has been cited and followed by the court of appeals in both the Eastern and Western Districts. *See Pace Construction Co. v. Missouri Highway and Transportation Commission*, 759 S.W.2d 272, 275 (Mo.App.1988); *Champ v. Poelker*, 755 S.W.2d 383, 387 (Mo.App.1988).

The primary basis for taxpayer suits arises from the need to ensure that government officials conform to the law. *Comment, Taxpayers' Suits: Standing Barriers and Pecuniary Restraints*, Temp.L.Q., Vol. 59, p. 951, 971 (1986). It rests upon the indispensable need to keep public corporations, their officers, agents and servants strictly within the limits of their obligations and faithful to the service of the citizens and taxpayers. S. Flanagan, *McQuillin Municipal Corporations § 52.29*, p. 74 (3rd Ed.1984). As the cases before the Court demonstrate, the strictness of the *Brock* test renders many actions of government officials free from judicial scrutiny.

In order to maintain a suit, taxpayers need not prove their taxes will increase because of the alleged expenditure. The impact on the taxpayer is presumed. A taxpayer who may be compelled to pay the assessment, or who has contributed to the sum jeopardized, is considered to have sufficient interest to enjoin the illegal act. 74 Am.Jur.2d, *Taxpayers' Actions, § 4*, p. 190 (1974). *See also* 64 C.J.S. *Municipal Corporations, § 2148*, p. 968–71 (1950). This Court has echoed this principle, stating:

> We are of the opinion that, where public interests are involved, and public funds are about to be dissipated for an illegal purpose, a single taxpayer may maintain an action for itself, and all other taxpayers in said city, to restrain the illegal acts complained of, if injunction will lie, without being required to show, at the trial, the extent of the damages which it may sustain, should the injunction be refused.

*Civic League of St. Louis v. City of St. Louis*, 223 S.W. 891, 893 (Mo.1920).

This Court recently held that citizens and taxpayers of Missouri have standing to challenge the legality of expenditures made by the Missouri State Lottery Commission. This was true even though money would probably be added to, rather than taken from, the state treasury. *Tichenor v. Missouri State Lottery Commission*, 742 S.W.2d 170, 172 (Mo. banc 1988). Taxpayers were also found to have standing when they challenged the expenditure of public funds for parochial schools, although no private pecuniary injury was alleged. *Beghorn v. Reorganized School Dist. No. 8*, 364 Mo. 121, 260 S.W.2d 573, 581 (1953).

The principle of taxpayer standing to challenge illegal expenditures was also articulated by this Court in *Clark v. Crown Drug Co.*, 348 Mo. 91, 152 S.W.2d 145 (1941). There the Court stated:

> In [taxpayer cases] it is not the damage suffered by each taxpayer or by all taxpayers as a class that opens the door to equity for relief, but it is *the public interests* which are involved in preventing the unlawful expenditure of money raised or to be raised by taxation.

*Missourians For Separation of Church and State v. Robertson*, 592 S.W.2d 825, 839 (Mo.App.1979) (Emphasis added in *Missourians*) (quoting *Clark v. Crown Drug Co.*, 152 S.W.2d at 147). Delaware's Supreme Court also endorsed this principle by holding:

> A taxpayer has a direct interest in the proper use and allocation of tax receipts. That interest gives the taxpayer a sufficient stake in the outcome of the suit to allow him to challenge improper uses of tax funds.

*City of Wilmington v. Lord*, 378 A.2d 635, 637 (Del.1977).

In light of the above principles, the Court holds that the test for taxpayer standing to challenge alleged illegal spending of public funds is not the two-part test found in *Brock* and its progeny. Absent fraud or other compelling circumstances, to have standing a taxpayer must be able to demonstrate a direct expenditure of funds generated through taxation, or an increased levy in taxes, or a pecuniary loss attributable to the challenged transaction of a municipality. This holding is consistent with the Court's prior decisions and the public policy implicit in taxpayer suits.

Public policy demands a system of checks and balances whereby taxpayers can hold public officials accountable for their acts. Even though an expenditure might produce a net gain, if the expenditure is not contemplated by the enabling legislation, it is illegal and should be enjoined. Taxpayers must have some mechanism of enforcing the law. Today's decision provides the door through which taxpayers may enter the courts to seek enforcement.

### *Eastern Missouri Laborers District v. St. Louis County*

Plaintiffs' petition alleges the County entered into two contracts relating to the remodeling of county offices without seeking a prevailing wage determination and without seeking competitive bids. The County was thus obligated to expend county funds. Plaintiffs alleged these obligations are illegal in that they violate state and county statutes for competitive bidding and prevailing wage determinations. So plead, the Court finds plaintiffs as taxpayers have standing to sue and their petition stated a cause of action. A petition is not to be dismissed for failure to state a claim if any set of facts asserted would, if proved, entitle plaintiffs to relief. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d at 61.

The judgment of the trial court is reversed and the case is remanded to the circuit court for further proceedings consistent with this opinion.

### *Brawley v. McNary*

The trial court in *John Brawley, et al. v. Gene McNary, et al.*, although ruling that the plaintiffs lacked standing, heard evidence and made findings of fact and conclusions of law. The court of appeals affirmed the judgment solely on the issue of standing and without addressing the other issues. Because plaintiffs as taxpayers have standing to sue the case is retransferred to the court of appeals for resolution of the remaining points on appeal.

Retransferred to the court of appeals.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and TURNAGE, Special Judge, concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.