

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| **AIRPORT TECH PARTNERS, LLP,** | ) | |
| **and STENTOR COMPANY, LLP,** | ) | |
| | ) | |
| **Appellants,** | ) | |
| | ) | |
| **v.** | ) | **No. SC94269** |
| | ) | |
| **STATE OF MISSOURI** | ) | |
| **and CITY OF KANSAS CITY,** | ) | |
| **MISSOURI,** | ) | |
| | ) | |
| **Respondents.** | ) | |

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
**The Honorable Jon Beetem, Judge**

*Opinion issued June 16, 2015*

Airport Tech Partners, LLP, and Stentor Company, LLP, (hereinafter jointly referred to as "Airport Tech") brought a declaratory judgment action against the State of Missouri, arguing that section 137.115.1[1] violates the uniformity clause set out in article X, section 3 of the Missouri Constitution because it permits the deduction of construction costs on airport property before assessing that property's true value in money but does not permit the deduction of construction costs before determining the true value in money of other commercial property. Airport Tech alleges that it has taxpayer standing to raise this issue because the application of section 137.115.1 to certain Platte County airport

---

[1] All statutory citations are to RSMo Supp. 2011 unless otherwise indicated.

property leased by Kansas City to TCC KCI Logistics I, LLC, ("TCC") resulted in the true value of that airport property being assessed at $0. Airport Tech alleges that this in turn must have resulted in an increase in taxes on other county property so the county could meet its budget needs. Therefore, Airport Tech claims, it has taxpayer standing to challenge the statute because a lower assessment of the airport property likely will result in a higher tax burden for Airport Tech than it otherwise would have paid were the statute not in effect. The City of Kansas City intervened as a defendant.

This Court affirms the trial court's judgment that Airport Tech lacked standing to seek a declaratory judgment. Airport Tech relies on the second of the three recognized bases for taxpayer standing: "(1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *Manzara v. State, 343 S.W.3d 656, 659 (Mo banc 2011).* But Airport Tech presented only speculation that the statute relied on affected the level of the airport property's assessment, much less that the general tax levy would increase due to the level of that assessment. The trial court correctly held that, stripped down to the basics, Airport Tech simply seeks to attack the assessment of another's property as a way to lower its own taxes. Missouri law is well-settled that a taxpayer does not have standing to challenge another's assessment.

## I.     *FACTUAL AND PROCEDURAL HISTORY*

The material facts of this case are largely undisputed. On June 15, 2011, Kansas City leased to TCC a parcel of land that adjoined the Kansas City International Airport (KCI). That property was located within the "ultimate airport boundary" designated by

KCI's federal airport layout plan. TCC improved the land with a large warehouse and driveways. It conveyed those improvements to Kansas City pursuant to the lease terms, and Kansas City then leased the premises back to TCC for a 60-year term.

The airport and the improved property owned by Kansas City and leased to TCC are in Platte County. Airport Tech also owns commercial properties in Platte County. Section 137.115.1 requires county assessors, including the Platte County assessor, to:

> annually assess all real property, including any new construction and improvements to real property, and possessory interests in real property [in the county] at the percent of its true value in money set in subsection 5 of this section.

Section 137.115.5 sets the percent of the true value of money of the real property at issue at 32 percent. Airport Tech does not quarrel with subsection 137.115.5.

But Airport Tech does object to a lengthy sentence the legislature added to section 137.115.1 in 2008. It believes that this sentence makes an unreasonable distinction between the method of assessing property within an airport boundary as compared with the method of assessing other commercial property. The sentence reads:

> The true value in money of any possessory interest in real property in subclass (3), where such real property is on or lies within the ultimate airport boundary as shown by a federal airport layout plan, as defined by 14 CFR 151.5, of a commercial airport having a FAR Part 139 certification and owned by a political subdivision, *shall be the otherwise applicable true value in money of any such possessory interest in real property, less the total dollar amount of costs paid by a party, other than the political subdivision, towards any new construction or improvements on such real property completed after January 1, 2008*, and which are included in the above-mentioned possessory interest, regardless of the year in which such costs were incurred or whether such costs were considered in any prior year.

(Emphasis added). In this provision, then, the legislature provides that, in return for

3

improvements being made on airport property by a private party, the cost of those improvements will be deducted from the value of the property before it is assessed for tax purposes. For ease of understanding, the language added to the statute will be referred to as the "airport property provision."

In 2012, Airport Tech filed a petition for declaratory judgment alleging that the airport property provision violates the "uniformity requirement" set out in article X, section 3 of the Missouri Constitution by unreasonably treating airport property differently than other property in its same class. The uniformity requirement states in relevant part:

> Taxes … shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax. … Except as otherwise provided in this constitution, the methods of determining the value of property for taxation shall be fixed by law.

*Mo. Const. art. X, § 3*.

This Court recently explained, in *Michael Jaudes Fitness Edge, Inc. v. Director of Revenue,* that the uniformity requirement does not mandate that all commercial property be taxed exactly the same. Rather, taxation may vary if there is a reasonable basis for differentiation:

> The uniformity provision does not prohibit all distinctions among taxpayers; it prohibits only distinctions between those in the same class or subclass. *See McKinley Iron, Inc. v. Director of Revenue*, 888 S.W.2d 705, 708 (Mo. banc 1994) ("The state … is not prohibited from treating one *class* of taxpayer differently from others"). In order to comply with this provision, "[i]t is only necessary that there be a reasonable basis for the … differentiation and that all persons similarly situated … be treated alike." *Bopp v. Spainhower*, 519 S.W.2d 281, 289 (Mo. banc 1975).

4

*248 S.W.3d 606, 610-11 (Mo. banc 2008).*[2]

The trial court did not reach the substantive issue whether to declare that the airport property provision in section 137.115.1 made a reasonable distinction between the valuation of airport property versus other commercial property. Instead, it held that Airport Tech did not have standing to seek a declaratory judgment as to the constitutional validity of the airport property provision in the first instance. In so holding, the trial court said that Airport Tech's claim that the assessment of the airport property was inadequate was, at its core, simply an argument that "[i]f someone's taxes go down, mine will go up." Such an argument is barred by the settled rule that one property owner has no standing to attack another's assessment. *See, e.g., State ex rel. Kansas City Power & Light Co. v. McBeth, 322 S.W.3d 525, 529-30 (Mo. banc 2010).*

Airport Tech appeals this ruling.[3] Because Airport Tech alleges the

---

[2] *Michael Jaudes* held that the legislature reasonably distinguished for tax purposes between personal training services provided in a place of recreation and personal training services provided outside places of recreation. *See also Gammaitoni v. Dir. of Revenue, 786 S.W.2d 126, 130-31 (Mo. banc 1990)* (holding, in part, that the legislature made a reasonable distinction for purposes of taxation between advertising sales by the taxpayer as compared with advertising sales by advertising agencies and broadcasting stations).

[3] The remainder of this opinion addresses whether section 137.115.1 violates the uniformity provision set out in article X, section 3. At one point in its brief, Airport Tech also states that it believes that the airport property provision violates article X, section 6.1 by creating an exemption from property taxes for airport property that has been improved. Article X, section 6.1 of the Missouri Constitution states: "All laws exempting from taxation property other than the property enumerated in this article [article X], shall be void." Airport Tech does not provide any arguments or citations in support of this second claim of unconstitutionality or include this issue in its points relied on, however. The Court, therefore, will not address it further other than to note that section 137.115.1 does not create any sort of exemption but, rather, affects how true value in money is determined for the purpose of property tax assessment. By contrast, an "exemption" from taxation is "[f]reedom from a duty, liability, or other requirement; an exception" or

5

unconstitutionality of a portion of a state statute that directs how assessors shall assess the subclasses of real and personal property, the appeal lies in this Court pursuant to article V, section 3 of the Missouri Constitution.[4]

## II.    STANDARD OF REVIEW

An appeal from summary judgment presents a legal issue that this Court reviews de novo.  *See ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).*  The Court reviews the record and accords the benefit of all reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered.  *Id.*

The trial court found that the property owners lack taxpayer standing.  Standing is a question of law that this Court reviews de novo.  *Schweich v. Nixon, 408 S.W.3d 769, 773 (Mo. banc 2013).*  Appellate courts "consider the petition along with any other non-contested facts to determine whether the petition should be dismissed due to … lack of standing."  *Borges v. Missouri Pub. Entity Risk Mgmt. Fund, 358 S.W.3d 177, 180 (Mo. App. 2012).*

## III.   AIRPORT TECH HAS NO STANDING TO SEEK A DECLARATORY JUDGMENT AS TO THE AIRPORT PROPERTY'S ASSESSMENT

When a question of standing exists, this Court has a duty to resolve that question

---

"[a]n amount allowed as a deduction from adjusted gross income, used to determine taxable income."  BLACK'S LAW DICTIONARY 692 (10th ed. 2014); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 795 (1993) ("1: the act of exempting or state of being exempt: freedom from any charge or obligation to which others are subject … 2: a cause for exempting (as a portion of taxable income)").

[4] "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of … a statute or provision of the constitution of this state …."  *Mo. Const. art. V, § 3.*

before reaching substantive issues. *Farmer v. Kinder, 89 S.W.3d 447, 451 (Mo. banc 2002)*.

> To grant a declaratory judgment, the court must be presented with:
>
> (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

*Missouri Soybean Ass'n v. Missouri Clean Water Comm'n, 102 S.W.3d 10, 25 (Mo. banc 2003)* (internal citations and quotation marks omitted). If a party is unable to meet requirement (2) by showing a legally protectable interest in the outcome of the litigation, then the party has no standing. *LeBeau v. Comm'rs of Franklin Cnty., 422 S.W.3d 284, 288 (Mo. banc 2014)*. "Regardless of an action's merits, unless the parties to the action have proper standing, a court may not entertain the action." *Eastern Mo. Laborers Dist. Council v. St. Louis Cnty., 781 S.W.2d 43, 45-46 (Mo. banc 1989)*.

Airport Tech alleges that its status as a Platte County taxpayer gives it a legally protected interest and confers standing. As this Court noted in *Ste. Genevieve School District R-II v. Board of Aldermen of the City of Ste. Genevieve*, taxpayer standing is recognized so that ordinary citizens can compel their government officials to conform to the dictates of the law "when spending public money." *66 S.W.3d 6, 11 (Mo. banc 2002).* "'[I]t is *the public interests* which are involved in preventing the unlawful expenditure of money raised [or to be raised] by taxation' that give rise to taxpayer standing." *LeBeau, 422 S.W.3d at 288 (quoting Eastern Mo. Laborers Dist. Council, 781 S.W.2d at 47).*

7

A taxpayer need not allege that it suffered a direct personal loss as a result of the challenged act. *Eastern Mo. Laborers Dist. Council, 781 S.W.2d at 46-47.* But neither will the mere filing of a lawsuit confer standing. *Manzara, 343 S.W.3d at 659.* The taxpayer must show: "(1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *Id.*; *accord LeBeau, 422 S.W.3d at 289, n.3*; *Eastern Mo. Laborers Dist. Council, 781 S.W.2d at 47.*

To establish taxpayer standing resulting from "a direct expenditure of funds generated through taxation," the showing of an expenditure is mandatory. *Manzara, 343 S.W.3d at 660.* This Court held in *Manzara* that "[a]n expenditure is '[a] sum paid out.' BLACK'S LAW DICTIONARY 658 (9th ed. 2009)." *Id.* *Manzara* determined that the taxpayers in that case did not have standing to challenge a law granting certain tax credits because a tax credit is not a sum paid out. *Id.* That means that "tax credits are not expenditures" of public funds. *Id.*[5] In so holding, *Manzara* rejected the argument that a tax credit should be treated like a tax expenditure because both result in a loss of monies that otherwise would be held by the state. *Id.*

Similarly, here, the provision of a different method of valuation of airport property for tax purposes does not constitute an expenditure of public funds. Rather, as in *Manzara,* it at most means that funds will not become public funds in the first instance

---

[5] *Cf. Tichenor v. Missouri State Lottery Comm'n, 742 S.W.2d 170, 172 (Mo. banc 1988)* (holding taxpayers had standing because they demonstrated expenditures by the state lottery commission that they alleged were illegal); *Berghorn v. Reorganized Sch. Dist. No. 8, Franklin Cnty., 260 S.W.2d 573, 581 (Mo. 1953)* (holding taxpayers had standing because they challenged the expenditure of public funds for parochial schools).

8

because they will not be paid in taxes. As with the tax credit at issue in *Manzara*, even if a lower assessment results in less money being collected, the assessment is not an expenditure and, therefore, cannot constitute "a direct expenditure of funds generated through taxation." *Id.*

For similar reasons, the assessment provision for airport property cannot result in "a pecuniary loss attributable to the challenged transaction of a municipality," *Manzara, 343 S.W.3d at 659,* because the assessment of a particular property does not result in a loss to the taxing entity; it merely affects the assessed value of a particular property.

Airport Tech concedes that the above two categories of taxpayer standing may not be present here. But, it argues, it has alleged enough to establish taxpayer standing by showing "an increased levy in taxes" due to the lower assessment resulting from the application of the airport property provision in section 137.115.1 to the TCC airport property. Specifically, the property owners allege that the county must take in a certain amount of money in taxes to meet its budget needs; so, if the airport property's assessment is too low, then the levy must go up to make up for the lost revenue.

Airport Tech's argument does not support standing. While couched in terms of an increase in "the levy" to compensate for lost revenue, Airport Tech is not actually alleging nor has it provided any evidence that Platte County has raised or intends to raise the levy as a result of the airport property's assessment. To the contrary, it simply speculates that this will be the case because the county will need the same amount of tax revenue regardless of whether the airport property provision applies. Therefore, it suggests, its own taxes ultimately may increase to make up for the lower assessment of

9

the airport property.

This argument has numerous deficiencies. First, there is no evidence that in setting the current levy the county relied on the airport property being assessed at any particular level; to the contrary, the only evidence is that the property previously has not been subject to assessment because it was unimproved property owned by Kansas City. It is pure speculation to suggest that the levy was in any way affected by the airport property provision.

Second, it is even more speculative to suggest that the county's tax levy will be raised in the future to make up for the alleged deficiency in assessment of the airport property in the future. Future levies necessarily will be based on a complex array of factors and laws and budget decisions. No one can state now what the levy will be in future years or whether it would increase or decrease as a result of any particular property's assessment, much less can anyone guess how the airport property would be assessed were section 137.115.1 not applicable. This is particularly true where, as here, the record shows other exemptions might apply; for instance, there is evidence in the record that TCC has subleased the property to an entity that would be entitled to a 50-percent tax exemption regardless of whether section 137.115.1 applies.

Further, to the extent that the assessment might be somewhat higher absent section 137.115.1, the county could choose not to make up for it, or to do so in a different way, or it might find that the difference in assessed value of county property will not be significantly affected by the assessment of the airport property.

Finally, and even more basically, the record does not support Airport Tech's claim

10

that section 137.115.1 was the basis for the county's assessment even in this case. While Airport Tech relies on the affidavit of a member of the assessor's office, it acknowledges that the affidavit merely states "Because we estimated the assessed value to be zero, we did not individually value the leasehold interests in the fee." This does not, as Airport Tech argues, show that section 137.115.1 was the basis for the assessment. To the contrary, it shows that the assessor's office failed to undertake an assessment of the airport property under section 137.115.1 at all. This is confirmed by the affidavit of another member of the assessor's office, which states that the Platte County assessor's office has no documents or figures on which it could have undertaken the assessment process required by section 137.115.1. Whatever else this record shows, it does not show that section 137.115.1 provided the basis for assessing the airport property in question.

This leaves only Airport Tech's argument that *its own* taxes may be higher if the lessee of the airport property pays no or too little tax. But, as the trial court correctly discerned, this argument is simply another way of saying that "[i]f someone's taxes go down, mine will go up." Such an argument is foreclosed by this Court's decision in *McBeth.* The issue in *McBeth* was whether a taxpayer could complain that the county assessor had inadequately assessed the value of a power plant during the time of its construction. This Court found the taxpayer did not have standing, stating:

> The longstanding rule in Missouri is that individual taxpayer plaintiffs lack standing to challenge other taxpayers' property tax assessments, as they are not injured personally by others' assessment calculations. …
> … Whether the taxpaying property owner is a corporation or a next-door neighbor (and the plaintiff a school district or an individual taxpayer), the principle that a third party is not permitted to challenge another's property tax assessment applies equally.

11

*McBeth, 322 S.W.3d at 529-30*; *accord W.R. Grace & Co. v. Hughlett, 729 S.W.2d 203, 206-07 (Mo. banc 1987).*

While *McBeth* concerned an attack by another property owner on its neighbor's past assessments, *McBeth*'s reasoning applies to Airport Tech's argument as well for it argues that its own tax burden will go up because it will have to make up for a proportion of the lost revenue from the airport property. If this rationale provided grounds for taxpayer standing, then every property owner would be entitled to complain about every other property owner's assessment on the same basis—by claiming that the challenged act would affect future assessments and indirectly lead to future tax increases paid by other taxpayers, even though the total tax collected would remain the same. Missouri has clearly and explicitly rejected such a basis for standing. *McBeth, 322 S.W.3d at 530.*

*W.R. Grace* is also instructive. Relied on by this Court both in *Manzara, 343 S.W.3d at 660-661,* and in *McBeth, 322 S.W.3d at 529, W.R. Grace* rejected a taxpayer's claim that it had standing to challenge the constitutional validity of another taxpayer's exemption under the manufacturer's tax for certain types of tangible personal property. *W.R. Grace, 729 S.W.2d at 206-07.* The Court declined to find grounds for standing on the basis that the effect of granting an exemption for certain property was that other property would be taxed at a greater rate. Rather, the Court held that, even if true, the taxpayer had no standing to raise this issue, for it simply sought to have the exemption invalidated to get a refund of its own taxes paid. *Id. at 205, 207.* To obtain standing the taxpayer must seek to protect the public interest rather than secure a personal benefit. *Id.*

*at 207.*

Finally, Airport Tech argues that it has standing as a taxpayer to challenge what it asserts is the unlawful discharge of the tax laws and to require enforcement of the Missouri Constitution's provisions regarding taxation. To have such standing, however, Airport Tech must fit its claims within one of the three categories set out above or else have special statutory standing. For the reasons just noted, it does not.[6] In the absence of standing, this Court cannot grant relief, nor can it give an advisory opinion. *Farm Bureau Town & Country Ins. Co. of Mo. v. Angoff, 909 S.W.2d 348, 353 (Mo. banc 1995)* ("Declaratory judgment actions should not be resorted to for the purpose of giving advisory opinions"). In the absence of a plaintiff with standing to seek declaratory relief, this Court can take no action but affirm the trial court's judgment.

## IV.    CONCLUSION

For the reasons noted, this Court affirms the trial court's judgment.

_____
**LAURA DENVIR STITH, JUDGE**

All concur.

---

[6] Airport Tech notes that in *McBeth* this Court found that the taxpayer did have standing to seek a declaratory judgment as to what assessment procedures the statute required the assessor to follow. *322 S.W.3d at 530-31.* Unlike the taxpayer in *McBeth,* however, Airport Tech complains not that the Platte County assessor failed to properly apply the relevant taxing provisions but, rather, that the assessor *did* properly apply them. Accordingly, the narrow basis for seeking declaratory relief recognized in *McBeth*, when a county official allegedly has failed to perform a required assessor function, is not helpful to Airport Tech. Moreover, Airport Tech has neither joined the assessor as a party nor sued to require the assessor to properly carry out ministerial assessment duties.

13