IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
PAUL T. LEHMANN, )
 )
 Appellant, )
 )
v. ) WD84439
 )
BOARD OF EDUCATION OF THE ) Opinion filed: February 22, 2022
FAYETTE R3 SCHOOL DISTRICT, )
 )
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF HOWARD COUNTY, MISSOURI
 THE HONORABLE SCOTT A. HAYES, JUDGE

 Division Two: Alok Ahuja, Presiding Judge,
 Edward R. Ardini, Jr., Judge and Janet L. Sutton, Judge

 Appellant Paul Lehmann (“Lehmann”) initiated this action against Respondent Board of

Education of the Fayette R3 School District (“the School Board”), challenging the School Board’s

implementation of a four-day school week. The School Board moved to dismiss Lehmann’s

amended petition and the trial court granted the motion, finding Lehmann lacked standing and

failed to state a claim upon which relief could be granted. Lehmann appeals. We conclude

Lehmann lacked standing to bring the claims asserted in his amended petition, and thus affirm the

judgment of the trial court.
 Factual and Procedural Background

 Lehmann initiated this action in October 2020, and filed his “Amended Petition

Declaratory Judgment and/or Injunction” in December of that same year.1 Lehmann’s amended

petition alleged as follows.2

 Lehmann is a taxpaying resident of Howard County who resides within the boundaries of

the Fayette R3 school district. He has “a Bachelor of Science degree in Education and a Master of

Divinity degree,” and a “life time interest in education and the wise use of tax dollars.” The School

Board is comprised of members elected “by the taxpayers of the Fayette R3 public school district.”

 In 2018, the former superintendent proposed to the School Board the implementation of a

four-day school week, with the goal to “cut costs of education” and “make Fayette more attractive

in hiring and retaining ‘qualified’ teachers.” Lehmann alleged the public was “strongly opposed

to the 4 day school week calendar.” In an attempt “to gain support for needed education funds, a

tax levy increase was proposed to be voted on in April of 2019.” Meanwhile, in January 2019, the

School Board voted to defeat the implementation of a four-day school week. “The tax levy increase

was soundly passed” in April 2019, and Lehmann asserted the “plain and simple message was that

the public . . . intended to designate the levy funds to fund a 5 day school week.”

 In fall of 2019, the new superintendent and some of the School Board members “revived

the movement to implement the 4 day school week, beginning in the 2020-21 school year.” “Fierce

opposition ensued” from the taxpayers, as Lehmann alleged they “felt betrayed by the openly

implied agreement that if the public passed the tax levy in April, 2019, then there would be no

1
 Lehmann has represented himself in all stages of this litigation.
2
 In reviewing a judgment granting a motion to dismiss “we treat all of the factual allegations in a petition as true, and
liberally grant to plaintiffs all reasonable inferences therefrom.” McConnell v. W. Bend Mut. Ins. Co., 606 S.W.3d
181, 190 (Mo. App. W.D. 2020) (emphasis in original). However, legal conclusions and conclusory statements
unsupported by factual allegations “need not be taken as true.” A.F. v. Hazelwood Sch. Dist., 491 S.W.3d 628, 632
(Mo. App. E.D. 2016).

 2
financial need to adopt” the four-day school week. In November 2019, the School Board “voted

to implement the new schedule.”

 Lehmann alleged the four-day school week harmed students and their families, teachers,

and the Fayette community at large. For example, he alleged that according to a statistical study

conducted by the Missouri Department of Elementary and Secondary Education (“DESE”), the

four-day school week has been shown “to cause lower average ACT (American College Testing)

scores as compared to the 5 day school week,” attaching to his amended petition graphs with

supporting data. He asserted that a four-day week “does not provide adequate time for rest and

play or snacks that are needed in a normal development of a child,” and amounts to “institutional

child neglect and child abuse.” He further asserted that the four-day school week required families

to pay for a day’s worth of child care and food that was historically “provided for in the budget

from tax revenue,” and thus constituted “an unauthorized added tax . . . imposed on families.”

Lehmann alleged that the “image of [the] community” was “tarnished” by the four-day school

week, and that he was “told by a prominent realtor in the area that his property value will go down

if a 4 day school week is implemented.”

 The amended petition set forth “possible causes of action,” including “Constitutional

Issues” and “Violations of Law,” such as “the Board no longer authorized to enact the 4 day school

week,” “receipt of state aid illegially [sic],” and “the Board taxing without authority.” The

amended petition also asserted four “counts”: (1) “Declaratory Judgment,” (2) “Injunction

Alternative,” (3) “State Aid Fraud,” and (4) “Tax Law Violation.” In essence, Lehmann claimed

that the School Board’s actions violated article IX, section 1(a) of the Missouri Constitution and

section 160.251, RSMo3; the School Board had no authority under the law to enact a four-day

3
 Article IX, section 1(a) of the Missouri Constitution provides: “A general diffusion of knowledge and intelligence
being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and

 3
school week; to the extent section 171.0314 provides for the implementation of a four-day school

week, such law is unconstitutional; the School Board committed fraud against the state by

reporting an illegal four-day school week and receiving state aid on that basis; and the School

Board, without authority, “imposed a hidden tax on families of students in the district by forcing

them to pay for child care, housing, and food on the 5th day in the 4 day school week schedule

when the tax levy increase passed by the voters meant that funds would be allocated for that 5 th

day.”

 As relief, Lehmann requested the trial court issue a declaratory judgment that the four-day

school week is unconstitutional, enjoin the School Board from proceeding with the four-day school

week, order the School Board return to the five-day school week, and order the School Board to

reimburse “families the amount of their expenses for the 5th day not in school for the 2020-2021

school year already accrued.”

 The School Board filed a motion to dismiss the amended petition on the grounds that

Lehmann lacked standing to bring his claims, he failed to state a claim upon which relief could be

granted, and the School Board enjoyed sovereign immunity to any claims sounding in tort or

contract. After the motion was fully briefed, the trial court heard argument from the parties.

maintain free public schools for the gratuitous instruction of all persons in this state within ages not in excess of
twenty-one years as prescribed by law.” Section 160.251 provides: “Whereas a general diffusion of knowledge and
intelligence is essential to the preservation of the rights and liberties of the people, and whereas education directly
affects the future of the citizens of our state, and whereas at few times in the history of this state and country has there
been greater critical interest in the public schools than at present, this act, which may be referred to as the ‘Excellence
in Education Act of 1985,’ is enacted to encourage and promote quality in our schools.” All statutory references are
to RSMo 2016, as supplemented.
4
 “Each board shall prepare annually a calendar for the school term . . . providing a minimum term of at least one
hundred seventy-four days for schools with a five-day school week or one hundred forty-two days for schools with a
four-day school week, and one thousand forty-four hours of actual pupil attendance. In school year 2019-20 and
subsequent years, one thousand forty-four hours of actual pupil attendance shall be required for the school term with
no minimum number of school days.” § 171.031.1.

 4
Thereafter, the trial court issued its “Judgment and Order Granting Defendant’s Motion to

Dismiss,” dismissing Lehmann’s amended petition with prejudice.

 The trial court found that Lehmann did not have a justiciable interest in the subject matter

of the action as required to have standing, but instead had an “indirect” interest in the matter, noting

that the amended petition “assert[ed] a litany of factual allegations alleging harm and damage not

to [Lehmann], but to School District staff, students, and parents resulting from the District’s

adoption of its 2020-2021 school calendar.”5 The trial court found that Lehmann, individually, was

not “adversely affected” by section 171.031—the statute he challenged as unconstitutional—or

“by a school calendar adopted under that statute that has had no direct effect on his personal legal

interests.” Further, while the trial court acknowledged that “in some instances a taxpayer may have

standing to sue a school district,” it found Lehmann failed to plead with specificity the damage he

would suffer as a taxpayer as necessary to confer taxpayer standing. The trial court concluded that

because Lehmann lacked standing to bring the claims in his amended petition, the matter must be

dismissed.6

 Lehmann filed a motion to vacate and memorandum in support, arguing that the trial

court’s dismissal “for lack of standing based on principles of common law . . . overlooked that [he]

also had standing under: 1) Missouri’s constitution, 2) public-interest, and 3) Missouri statute.”

Lehmann further argued the trial court “also misapplied common-law standing.” The trial court

denied the motion. This appeal followed.

5
 Lehmann has not alleged he was an employee of the school district, or he was the parent, family member, or guardian
of a student attending school in the district.
6
 Nonetheless, the trial court also addressed the substance of Lehmann’s claims, and found that he failed to state a
claim upon which relief could be granted. Because we dispose of this appeal on the issue of standing, we decline to
detail the trial court’s findings as to the merit—or lack thereof—of Lehmann’s claims.

 5
 Lehmann raises four points on appeal. In his first point, he asserts the trial court erred in

dismissing his amended petition for lack of standing. In his second point, he asserts the trial court

erred in dismissing his amended petition because his “due process rights were violated” in that the

color graphs attached to his amended petition were scanned by the court during the filing process

into black and white, rendering the graphs unreadable. In his third and fourth points, Lehmann

asserts the trial court erred in finding he failed to state a claim upon which relief could be granted.

Because our determinations as to Points I and II are dispositive of this appeal, we do not reach

Points III and IV.

 Point I - Standing7

 In his first point relied on, Lehmann argues he had “standing as provided by: A) the

Missouri Constitution, B) [his] public interest, C) Missouri Statute, and D) common law,” and then

sets forth in greater detail his asserted grounds for standing. However, he fails to properly develop

and support some of these grounds in the argument section of his brief, and he raises additional

grounds in the argument not set forth in his point relied on. To properly preserve a claim of error

on appeal, the appellant must raise the claim in his point relied on and support the contention in

the argument portion of the brief. See The Schumacher Grp., Ltd. v. Schumacher, 474 S.W.3d 615,

624 n.11 (Mo. App. W.D. 2015) (an argument that exceeds the scope of the point relied on

preserves nothing for review); Weisenburger v. City of St. Joseph, 51 S.W.3d 119, 124 (Mo. App.

W.D. 2001) (“An appellant must develop the contention raised in the point relied on in the

argument section of the brief” and “[a]rguments raised in the points relied on that are not supported

7
 “Standing is a question of law that this Court reviews de novo.” Airport Tech Partners, LLP v. State, 462 S.W.3d
740, 744 (Mo. banc 2015). “Appellate courts consider the petition along with any other non-contested facts to
determine whether the petition should be dismissed due to lack of standing.” Id. (internal marks omitted).

 6
by argument in the argument portion of the brief are deemed abandoned and present nothing for

appellate review.”).

 We hold pro se appellants “to the same standards as lawyers and [they] are expected and

required to comply with the briefing requirements of Rule 84.04.” Acton v. Rahn, 611 S.W.3d 897,

900 (Mo. App. W.D. 2020). Nonetheless, even though Lehmann has failed to properly preserve

many of his arguments relating to standing, to the extent we are able to discern and understand his

arguments we will address them, provided we can do so without abdicating our role as a neutral

adjudicator. See Langston v. Langston, 615 S.W.3d 109, 116 (Mo. App. W.D. 2020) (noting our

preference for resolving cases on the merits); Kramer v. Park-Et Rest., Inc., 226 S.W.3d 867, 870

(Mo. App. E.D. 2007) (“Appellate courts should not become advocates for an appellant by

speculating about facts and arguments that have not been made.”).8

 To have standing, a plaintiff must “demonstrate a personal stake in the outcome of the

litigation, meaning a pecuniary or personal interest directly at issue and subject to immediate or

prospective consequential relief.” Mo. Coal. for Env’t v. State, 579 S.W.3d 924, 926 (Mo. banc

2019) (internal marks omitted). “In the context of an action for declaratory judgment, Missouri

courts require that the plaintiff have a legally protectable interest at stake in the outcome of the

litigation.” Ste. Genevieve Sch. Dist. R-2 v. Bd. of Aldermen, 66 S.W.3d 6, 10 (Mo. banc 2002);

see also Airport Tech Partners, LLP v. State, 462 S.W.3d 740, 744-45 (Mo. banc 2015) (If the

plaintiff in a declaratory judgment action is unable to show “a legally protectable interest in the

outcome of the litigation, then the party has no standing.”). “A plaintiff has a legally protectable

interest if the plaintiff is directly and adversely affected by the action in question or if the plaintiff’s

8
 Additionally, we agree with the School Board that Lehmann’s statement of facts does not comply with Rule 84.04(c),
in that it consists almost entirely of argument and includes assertions that do not reference any specific portion of the
record on appeal.

 7
interest is conferred by statute.” Byrne & Jones Enters., Inc. v. Monroe City R-1 Sch. Dist., 493

S.W.3d 847, 851 (Mo. banc 2016) (internal marks omitted).

 Applying this standard, we find the trial court did not err in concluding Lehmann lacked

standing. Lehmann’s amended petition failed to allege facts demonstrating that he was directly

and adversely affected by the implementation of a four-day school week. Rather, the harms alleged

by Lehmann befell students, their families, and the school district staff, and Lehmann did not assert

any connection to these individuals such that he, too, was alleged to be directly impacted by the

four-day school week. While Lehmann may be concerned with the quality of education afforded

students in his community, that fact, alone, is insufficient to bestow upon him a legally protectable

interest sufficient to challenge the School Board’s actions here. Cf. Mo. Coal. for Env’t, 579

S.W.3d at 927 (“The generalized interest of all citizens in constitutional governance does not

invoke standing.” (internal marks omitted)); State ex rel. Robinson v. Office of Attorney Gen., 87

S.W.3d 335, 339 (Mo. App. W.D. 2002) (director of the public defender’s office lacked standing

to seek declaratory judgment that the Office of Administration could not provide copies of billing

records of the public defender’s office to the attorney general, noting that the director’s “tying his

interest to the constitutional interests of the indigents that he represents is further indication of the

indirectness of his interest”).

 The closest Lehmann gets to alleging he was personally affected by the implementation of

the four-day school week is in paragraph 36 of the amended petition, in which he asserts he was

“told by a prominent realtor in the area that his property value will go down if a 4 day school week

is implemented.” But even this allegation is insufficient to confer standing upon Lehmann.

Lehmann did not allege his property value actually decreased,9 he merely alleged some

9
 Lehmann filed his amended petition in December 2020, and according to that petition, the four-day school week was
in effect during the 2020-21 school year. Furthermore, although Lehmann asserted in his point relied on that he

 8
unidentified individual told him it would. This assertion of harm is speculative at best, and “mere

speculation” cannot confer standing. See City of Slater v. State, 494 S.W.3d 580, 589 (Mo. App.

W.D. 2016) (plaintiffs lacked standing to challenge state office’s interpretation of statute;

plaintiffs’ allegation that statute would expose them to litigation and judgments was mere

speculation, as they did not “allege with any specificity that such lawsuits have been threatened or

filed, or on what grounds such lawsuits might be filed”).

 Nonetheless, Lehmann argues that “because [he is] a citizen, and the Missouri Constitution

Article IX, Sec. 1(a) and RSMo 160.251 makes quality education a public interest of the state and

country, [he is] clearly in the zone of legal interests as to standing in the issue of the 4 day school

week.” We disagree. It is correct that “Missouri requires that a complainant be within the zone of

interests to be protected or regulated by the statute or the constitutional guarantee in question to

bring an action thereunder.” Byrne & Jones Enters., Inc., 493 S.W.3d at 851. Lehmann, however,

does not fall within the “zone of interests” to be protected or regulated by article IX, section 1(a)

of the Missouri Constitution or section 160.251.

 Article IX, section 1(a) of the Missouri Constitution, titled “Free public schools—age

limit,” provides that:

 A general diffusion of knowledge and intelligence being essential to the
 preservation of the rights and liberties of the people, the general assembly shall
 establish and maintain free public schools for the gratuitous instruction of all
 persons in this state within ages not in excess of twenty-one years as prescribed by
 law.

“produced facts in his Amended Petition and arguments, as to standing, showing that he had a legal interest as a
taxpayer whose property value would decline as much as $40,000 as the result of the implementation of the deficient
4 day school week,” he failed to provide any support or citation to the record for this new allegation relating to the
possible $40,000 decrease in his property value. The $40,000 decrease was not alleged in the amended petition, and
Lehmann did not develop or support this contention in the argument section of his brief. Thus, we do not consider this
allegation in our standing analysis. See Roberson v. KMR Constr., LLC, 208 S.W.3d 320, 322 (Mo. App. E.D. 2006)
(a contention is deemed abandoned when raised in the point relied on but not supported “with relevant authority or
argument beyond conclusions”).

 9
Lehmann relies on the introductory clause of this provision, asserting it sets forth “standards of

education” and referring to it as the “quality education guarantee.” However, the Missouri

Supreme Court has interpreted the introductory clause as merely “outlin[ing] the purpose and

subject of Missouri’s public education system,” noting “it provides no specific directive or

standard for how the State must accomplish a ‘diffusion of knowledge.’” Comm. for Educ. Equal.

v. State, 294 S.W.3d 477, 488 (Mo. banc 2009). Thus, the Supreme Court determined that the

introductory clause was not to be “given direct effect, as it is purely aspirational in nature.” Id. at

488-89; see also Pearson v. Koster, 359 S.W.3d 35, 42 (Mo. banc 2012) (noting that in Committee

for Education Equality, the court “refused to find a basis for a suit” in article IX, section 1(a)).

Consistent with the Supreme Court’s decision in Committee for Education Equality, we find the

introductory clause of article IX, section 1(a) does not set forth a “quality education guarantee” as

Lehmann asserts, nor does it create a “public interest” in all citizens allowing them to sue to enforce

this alleged guarantee.10

 We reach a similar conclusion with regard to section 160.251, which describes the purpose

of the Excellence in Education Act, and provides as follows:

 Whereas a general diffusion of knowledge and intelligence is essential to the
 preservation of the rights and liberties of the people, and whereas education directly
 affects the future of the citizens of our state, and whereas at few times in the history
 of this state and country has there been greater critical interest in the public schools
 than at present, this act, which may be referred to as the “Excellence in Education
 Act of 1985,” is enacted to encourage and promote quality in our schools.

Similar to the introductory clause of article IX, section 1(a), this language is aspirational, and does

not create any legal mandates or standards that an individual can sue to enforce.11 Section 160.251

10
 Thus, to the extent Lehmann has argued section 171.031 is unconstitutional as violative of article IX, section 1(a)—
although not raised in his point relied on—we find he is not within the “zone of interests” to bring such a challenge.
11
 We also note that section 160.251 solely describes the purpose of the “Excellence in Education Act,” and Lehmann
has not purported to bring any claim under that act.

 10
simply does not make a “quality education” a “public interest” of all citizens such that Lehmann’s

challenge to the four-day school week falls within the “zone of interests” of this statute.

 We find Lehmann’s remaining arguments in support of standing unconvincing. He appears

to argue that he enjoys taxpayer standing, but we find he has failed to demonstrate such a status.

“[T]he mere filing of a lawsuit does not confer taxpayer standing upon a plaintiff”; rather “a

taxpayer must establish that one of three conditions exists: (1) a direct expenditure of funds

generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to

the challenged transaction of a municipality.” Manzara v. State, 343 S.W.3d 656, 659 (Mo. banc

2011). Although Lehmann has alleged he is a taxpayer residing within the boundaries of the school

district, he has not argued—let alone established—that any of the above three conditions exist, and

thus his claim of taxpayer standing must fail. See Airport Tech Partners, 462 S.W.3d at 747-48

(rejecting the plaintiff’s argument that it had taxpayer standing to challenge what it asserted was

the unlawful discharge of tax laws, finding the plaintiff failed to “fit its claims [of taxpayer

standing] within one of the three categories set out above”).

 Lehmann also asserts—for the first time on appeal—that there “is a 6th ground” for

standing, namely that he is “an ordained minister who is legally required to report child abuse,”

including what he characterizes as the “institutional child abuse” resulting from the four-day

school week. As support for this argument, Lehmann does no more than cite to paragraph one of

his amended petition, in which he alleged he has “a Master of Divinity degree.” Even if Lehmann

had actually alleged in his amended petition that he was an ordained minister—which he did not—

Lehmann fails to provide any legal authority to support his novel argument that his claimed status

as a mandatory reporter of child abuse confers standing upon him to institute a legal challenge to

the four-day school week. “If a party fails to support a contention with relevant authority or

 11
argument beyond conclusions, the point is considered abandoned.” Roberson v. KMR Constr.,

LLC, 208 S.W.3d 320, 322 (Mo. App. E.D. 2006). Accordingly, we do not address Lehmann’s

contention regarding this “6th ground” for standing.

 Similarly, Lehmann put forth additional grounds for standing in his point relied on that

were not supported or further elaborated upon in the argument section of his brief. Specifically, he

asserted “there was a justiciable interest by law created by the 4 day school week structure as

documented in color graphs published by [DESE] showing a marked deflation of standardized

ACT student test scores as compared to the traditional 5 day school week school students[.]” He

also asserted “that, as a public institution, Fayette R3 School District is subject to public interest

law suits by citizens under the Missouri Constitution Article X, Sec. 23 for unconstitutional actions

by Respondent School Board.” However, Lehmann did not further explain or support either of

these bases for standing in the argument section of his brief.12 Accordingly, we find these

contentions relating to Lehmann’s standing abandoned as well. See Roberson, 208 S.W.3d at 322.

 Finally, Lehmann asserts he “has constitutional and statutory guaranteed standing” and

“[d]etails of these grounds for standing are presented in [his] Motion to Vacate at [record on

appeal] 98-102.” However, “[i]t is not the role of an appellate court to serve as an advocate for a

litigant, and we have no duty to search the transcript or record to discover the facts which

substantiate a point on appeal.” Holding v. Kan. City Area Transp. Auth., 584 S.W.3d 358, 360

(Mo. App. W.D. 2019) (internal marks omitted). We will not undertake a search of the record to

discern Lehmann’s arguments, and to the extent Lehmann asserts other bases for standing in his

12
 We note that Lehmann does argue in his second point that “[i]n the Amended Petition, [he] described the injury to
students’ academic performance in paragraphs 20-21(R9) and referred the court to the attached graphs as expert
generated facts to prove that the 4 day school week causes injury to literally everyone.” However, this argument was
made in support of the claim of error raised in his second point—that his due process rights were violated when the
graphs were scanned into black and white during the filing process—and not in support of his claim that he had
standing.

 12
motion to vacate that he has not included in his briefing on appeal, we will not review such

arguments. See Kramer, 226 S.W.3d at 870 (“It is not the function of an appellate court to search

the record to identify possible errors and research any issues so revealed.”).

 For the reasons stated above, we find the trial court did not err in dismissing Lehmann’s

amended petition for lack of standing. Point I is denied.

 Point II – Due Process Violation

 In his second point, Lehmann argues the trial court erred in dismissing his amended petition

because his “due process rights were violated when the court corrupted the two essential fact based

graphs in color, attached to [his] Amended Petition, showing how 4 day school week students

perform consistently below 5 day school week students on universal ACT tests given by [DESE]

to measure the achievement of students in public education, by scanning the color graphs into

black and white and unreadable copies for court use in the electronic filing, in that every reference

in the court Judgment to lack of facts and lack of evidence clearly excludes the presence of the

core and crucial and concrete piece of evidence and facts in color showing the injury perpetuated

by the Respondent Board upon students, their families, and citizens of the country and to

[Lehmann’s] property value in adopting the 4 day school week and thus caused the dismissal of

[his] Amended Petition.”

 Lehmann concedes that he did not raise this claim to the trial court, asserting he did not

discover this issue until “the circuit clerk produced black and white copies of the graphs as certified

copies of the Record on Appeal.” However, Lehmann has not asserted that he could not have

discovered this issue while the case was pending before the trial court, only that he did not.

Accordingly, we find this claim of error was not preserved for our review. See Heifetz v. Apex

Clayton, Inc., 554 S.W.3d 389, 397 n.10 (Mo. banc 2018) (“Issues raised for the first time on

 13
appeal are not preserved for appellate review.”); Loutzenhiser v. Best, 565 S.W.3d 723, 730 (Mo.

App. W.D. 2018) (An appellate court “will not convict a trial court of error on an issue that was

not put before the trial court to decide.” (internal marks omitted)).

 However, even if we were to address the merits of this claim, we would find Lehmann did

not suffer a due process violation as a result of the graphs being scanned into black and white. To

prove a due process violation, Lehmann would have to establish he suffered prejudice. See City of

Kan. City v. Jordan, 174 S.W.3d 25, 47 (Mo. App. W.D. 2005) (“Proof of prejudice is necessary

if a denial of due process is to be made out.” (quoting In re Jones, 431 S.W.2d 809, 819 (Mo. banc

1966))). There was no prejudice here, where the graphs Lehmann claims were unreadable

contained essentially the same information alleged in his amended petition at paragraphs 20 and

21. Further, as discussed above in our analysis of Lehmann’s standing, Lehmann was not

personally and directly affected by any educational harm allegedly suffered by students in the

school district such as to confer standing upon him to challenge the four-day school week. Thus,

the graphs attached to his amended petition—which he claims demonstrate student

underperformance resulting from the four-day school week—would not have established, or even

supported, his claim of standing.

 Point II is denied.

 Conclusion

 The judgment of the trial court is affirmed. However, because we affirm the dismissal of

Lehmann’s amended petition solely on the basis of his lack of standing, we modify the trial court’s

 14
judgment pursuant to Rule 84.14 to dismiss the amended petition without prejudice, rather than

with prejudice. Mo. State Conference of NAACP v. State, 633 S.W.3d 843, 848 (Mo. App. W.D.

2021).

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

 15