

# In the
# Missouri Court of Appeals
## Western District

LEE'S SUMMIT LICENSE, LLC, ET AL., )
)
)  **WD78694**
       **Respondents,** )
)  **OPINION FILED:  January 19, 2016**
v. )
)
OFFICE OF ADMINISTRATION, ET AL., )
)
)
       **Appellants.** )

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel R. Green, Judge

Before Division One:  Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

The Missouri Office of Administration, Division of Purchasing & Materials Management, and Department of Revenue (collectively "State") appeal from a judgment granting a motion for judgment on the pleadings filed by Lee's Summit License, LLC ("LS License") and James Ryan Williams ("Williams"), the plaintiffs in a declaratory judgment and injunctive relief action that challenged procedures and policies used by the State to award a contract to operate a license fee office.  Because Williams did not sustain his burden to establish that he had standing to challenge inclusion of a return to state provision in the State's request for proposal, and because the trial court erroneously concluded that the inclusion of a return to state provision in the State's request for

proposal was unlawful, the judgment of the trial court in favor of LS License and Williams is reversed and vacated.

## Factual and Procedural Background

LS License is a Missouri limited liability company. Williams is a member of LS License. On June 5, 2009, LS License was awarded a contract by the State to operate a license fee office in Lee's Summit ("LS License Contract"). The authority for such contracts is specified by section 136.055,[1] which provides that a license fee office contractor "act[s] as an agent of the department of revenue." Williams is designated as the contract manager under the LS License Contract.

The LS License Contract had a one-year term, expiring on June 4, 2010, with the prospect for three renewals. The LS License Contract included an amended Exhibit H, a pricing page, which addressed the "Return of Processing Fees Earned to the State" ("Return to State") as follows:

> If the offeror proposes to return to the state agency a portion of the processing fees earned, the offeror must state, in the table below, a single firm, fixed percentage of the monthly fees earned for the original contract period and for each renewal period that will be returned to the state agency. If no percentage is stated, it will be assumed that the offeror is not proposing to return a portion of the processing fees earned.

In the table that followed, LS License agreed to pay Return to State in the amount of 8% during the original contract period, and in the amounts of 6%, 5%, and 3% respectively during the three successive renewal periods.

---

[1]Except as otherwise noted, all statutory references are to RSMo 2000 *as amended through October 23, 2013*, the date of the State's request for proposal that is at issue in this case, except as otherwise noted. Specifically, and except as otherwise noted, all references to section 136.055 are to the version of that statute as amended in 2009.

2

The LS License Contract was renewed three times as anticipated. The first renewal term was from June 5, 2010, through June 4, 2011. An issued Notice of Contract Renewal confirmed that the Return to State during the first renewal term would be 6%. The second renewal term was from June 5, 2011, through June 4, 2012. An issued Notice of Contract Renewal confirmed that the Return to State during the second renewal term would be 5%. The third renewal term was from June 5, 2012, through June 4, 2013. A corresponding amendment to the LS License Contract stated that the Return to State during the third renewal term would be 3%.

At the end of the third renewal term, the State planned to re-bid the license fee office contract in Lee's Summit. In anticipation of those efforts, the State extended the LS License Contract through September 4, 2013, and then again though January 4, 2014. On each occasion, in a corresponding amendment, LS License agreed that "[a]ll . . . terms, conditions, and provisions, including the monthly percentage returned to the state, shall remain the same and apply hereto during the extended period."

The State issued request for proposal B3Z14093 to re-bid the Lee's Summit license fee office on October 25, 2013 ("RFP"). The subject of Return to State was addressed in section 3.4 of the RFP as follows:

3.4    **Evaluation of Return to the State**:

3.4.1  The objective evaluation of the return to the state shall be based upon the sum of the firm, fixed percentages stated on the pricing page, Exhibit A.

3.4.2  The evaluation points shall be calculated based on the following formula.

| Compared Offeror's Percentage Divided by the Highest Responsive Offeror's Percentage | X | Maximum Evaluation Points (10) | = | Assigned Evaluation Points |
|---|---|---|---|---|

3

3.4.3 If Exhibit A is not completed and returned with the proposal, a percentage of zero will be assumed and no points for Return to the State will be assigned.

Exhibit A referenced in section 3.4.3 was essentially identical to Exhibit H in the LS License Contract. Exhibit A permitted an offeror responding to the RFP to insert a proposed percentage for Return to State for five time frames corresponding with the anticipated contract term, which was to commence on contract award and continue through November 27, 2017.

LS License and one other offeror, License Office Services, LLC ("License Office"), responded to the RFP. Both submitted offers that proposed percentages for Return to State on Exhibit A of the RFP.

While the two bids were being evaluated, the State twice extended the LS License Contract from January 5, 2014, through March 5, 2014, and then again from March 6, 2014 through July 5, 2014. On both occasions, corresponding amendments confirmed LS License's continued agreement to remit Return to State payments.

On May 15, 2014, the State completed its evaluation of the two offers it had received in response to the RFP. An evaluation report form awarded points in four of seven possible categories: Personnel, Method of Performance, Return to State, and MBE/WBE Certification Status. License Office received a total of 174.33 points and LS License received a total of 168.82 points, a difference of 5.51 points. In the Return to State category, License Office received 10 points and LS License received 8.44 points, a difference of 1.56 points. Without Return to State as a scored category, License Office would have remained the high bidder.

4

On May 15, 2014, the State awarded the Lee's Summit license fee office contract to License Office for a term beginning May 29, 2014, through November 27, 2017.

On May 22, 2014, LS License submitted a bid protest pursuant to 1 CSR 40-1.050(9). The bid protest letter raised eleven complaints involving the fairness of the bid process,[2] including complaints about the awarding of points in certain of the categories on the evaluation report form. However, the bid protest letter *did not* question the inclusion of a Return to State provision in the RFP and did not complain about how points were awarded for Return to State.[3]

While the bid protest was pending, the State extended the LS License Contract on four more occasions from July 6, 2014, through August 5, 2014; from August 6, 2014, through September 5, 2014; from September 6, 2014, through October 5, 2014; and from October 6, 2014, through February 5, 2015. On the first two occasions, corresponding amendments confirmed LS License's continued agreement to abide by all terms of its contract, including the Return to State provision. On the second two occasions, corresponding amendments confirmed that "[a]ll . . . terms, conditions, and provisions" of the contract would remain the same during the extension periods, though no specific reference was made to Return to State.

---

[2]The complaints, summarized, where: (1) changes to the Personnel section of the RFP gave License Office an unfair competitive advantage; (2) a change to the terms of the RFP addressing Personnel exceeded the State's statutory authority pursuant to section 34.042.3; (3) the RFP failed to set forth evaluation criteria as required for the Personnel and Method of Performance categories; (4) the RFP unlawfully changed evaluation criteria for the Personnel category; (5) an award of points to License Office for use of the existing license office was arbitrary and capricious; (6) an award of points to License Office for offering to retain existing office clerks was arbitrary and capricious; (7) License Office was given credit for the same employee twice; (8) LS License should have been given points for its customer service working area; (9) it was arbitrary, capricious, and unreasonable to determine that License Office had the requisite line of credit or unencumbered assets; (10) the State failed to adequately safeguard the confidentiality of information derived from proposals; and (11) License Office should not have been awarded points for its claimed WBE status.

[3]1 CSR 40-1.050(9) requires a bid protest to set forth a "[d]etailed statement describing the grounds for the protest," and provides that a determination will only be issued "on the issues asserted in the protest."

On November 4, 2014, the State denied LS License's bid protest. Each of the eleven complaints raised by the bid protest letter was addressed in the State's denial letter. Because Return to State was not raised as an issue in LS License's bid protest, the State's denial letter did not address Return to State.[4]

On November 25, 2014, LS License and Williams filed a verified petition against the State seeking a declaratory judgment that the contract awarded to License Office was void, and seeking injunctive relief to enjoin implementation of the awarded contract. License Office was not named as a defendant in the lawsuit and never sought leave to intervene. On December 9, 2014, the trial court entered a temporary restraining order effective through January 5, 2015, enjoining the State "from taking any steps to implement" the License Office contract. LS License and Williams posted a $6,000 bond to support the temporary restraining order.

On December 22, 2014, LS License and Williams filed an amended petition against the State seeking judicial review of the State's "procurement that is the subject of this lawsuit" pursuant to section 536.150. [L.F. 0017, ¶ 18] The amended petition asserted six counts, each of which sought unique declarations that specific aspects of the procurement process were conducted unlawfully or arbitrarily and capriciously; each of which sought a declaration that the contract awarded to License Office was void; each of which sought to enjoin the State from implementing the contract with License Office; and some of which sought an award of attorneys' fees.[5]

---

[4]*See supra* note 3.

[5]Count I complained that with respect to the Personnel and Method of Performance categories, the RFP failed to adequately describe evaluation criteria; that the RFP gave License Office an unfair competitive advantage in the Personnel category; that the RFP process unlawfully changed evaluation criteria involving the Personnel category; that changes to the RFP process referenced in Count I exceeded the State's authority pursuant to section

After the amended petition was filed, the trial court periodically extended the temporary restraining order, causing it to remain in effect through entry of the judgment from which this appeal is taken.[6]  As a result, LS License has continued to operate the Lee's Summit license fee office throughout these proceedings.[7]

On April 21, 2015, LS License filed a motion for judgment on the pleadings on Count III of the amended petition, which sought a declaration that the Return to State provision in the RFP was unlawful and that as a result, the contract awarded to License Office was void and its implementation should be enjoined.

On May 6, 2015, the trial court entered a "final judgment" ("Judgment").  The Judgment granted the motion for judgment on the pleadings and entered judgment in favor of LS License and Williams on Count III of the amended petition.  The trial court ruled that the Return to State provision in the State's RFP was unlawful because "there is no statutory authority" for Return to State, and because Return to State conflicts with section 136.055.  The trial court ruled that as a result, the RFP and related procurement process for the Lee's Summit license fee office "was conducted in an unlawful manner" and that the contract awarded to License Office "is void and of no legal effect."  The trial

34.042.3; and that 1 CSR 40-1.050(19)(C) conflicts with section 34.042.3.  Count II complained that the State arbitrarily and capriciously awarded (or failed to award) points for retention of clerks, for the size of customer service working areas, and for verification of lines of credit; and failed to maintain confidentiality as required by law.  Count III challenged the inclusion of a Return to State provision in the RFP as unlawful or arbitrary and capricious.  Count IV claimed that the State applied unpromulgated rules in awarding Return to State points, and sought the recovery of attorney fees pursuant to section 536.021.9.  Count V claimed that the State applied an unpromulgated rule to award points for MBE/WBE status and sought the recovery of attorney fees pursuant to section 536.021.9.  Count VI claimed that the State unlawfully permitted License Office to amend its proposal to cure its inability to retain existing clerks or to use existing office space.

[6]No one objected to the trial court's perpetual renewal of the temporary restraining order.

[7]The extensions of the LS License Contract during the RFP and bid protest timeframes were treated by the State as emergency extensions pursuant to section 34.045 because of the essential nature of the services provided in the Lee's Summit license fee office.  Although the record on appeal does not include written extensions of the LS License Contract after February 5, 2015, the parties confirmed during oral argument that LS License has continued to operate the Lee's Summit license fee office throughout these proceedings.

court permanently enjoined the State from implementing the License Office contract. The Judgment dismissed Counts I, II, IV, V, and VI of the amended petition, declaring them moot.[8]

The State appeals.

## Standard of Review

The amended petition sought judicial review of the State's award of a contract to License Office pursuant to section 536.150, which addresses judicial review of noncontested administrative decisions. "In noncontested cases, the circuit court does not utilize the competent and substantial evidence test employed in reviewing contested agency decisions." *Pub. Commc'ns Servs., Inc. v. Simmons*, 409 S.W.3d 538, 545 (Mo. App. W.D. 2013). "Instead, the circuit court conducts a broader de novo review in which it hears evidence on the merits of the case, makes a record, determines the facts, and decides whether, in view of those facts, the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious, or otherwise involves an abuse of discretion." *Id.* "On appeal, the appellate court reviews the judgment of the circuit court, not the decision of the administrative agency." *Id.* "Appellate review of the circuit court's judgment in a noncontested case is essentially the same as the review for a court-tried case." *Id.* "Thus, the scope of appellate review is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Id.* "Accordingly, the appellate court reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary,

---

[8]LS License and Williams have not cross-appealed the trial court's dismissal of these counts.

capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law."[9] *Id.*

## Threshold Issue of Standing

The issue of standing to assert Count III of the amended petition was not addressed by the trial court. However, as a threshold matter, we "have a duty to determine if a party has standing prior to addressing the substantive issues of the case. For this reason, standing cannot be waived." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012) (citing *Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002)).

"Standing is a question of law, which is reviewed de novo." *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011). "Regardless of an action's merits, unless the parties to the action have proper standing, a court may not entertain the action." *E. Mo. Laborers Dist. Council v. St. Louis Cty.*, 781 S.W.2d 43, 45-46 (Mo. banc 1989). "To have standing, the party seeking relief must have 'a legally cognizable interest' and 'a threatened or real injury.'" *Manzara*, 343 S.W.3d at 659 (quoting *E. Mo. Laborers*, 781 S.W.2d at 46). "'When seeking declaratory relief, . . . [a] legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question.'" *Borges v. Mo. Pub. Entity Risk Mgmt. Fund*, 358 S.W.3d 177, 181 (Mo. App. W.D. 2012). (quoting *Mo. Ass'n of Nurse Anesthetists, Inc. v. State Bd. of Registration for the Healing Arts*, 343 S.W.3d 348, 354 (Mo. banc 2011)). The party seeking relief has "the burden of establishing that they have standing." *Manzara*, 343 S.W.3d at 659.

---

[9]The administrative agency decision reviewed by the trial court was the award of a contract to License Office following a competitive bidding process, and **not** the rejection of LS License's bid protest letter. Although 1 CSR 40-1.050(9) permits an unsuccessful bidder to file a bid protest letter, the exhaustion of administrative remedies is not required as a condition of seeking section 536.150 judicial review of an administrative agency's noncontested decision. *Strozewski v. City of Springfield*, 875 S.W.2d 905, 906-07 (Mo. banc 1994). Thus, it is immaterial that LS License's bid protest letter did not raise Return to State as an issue.

LS License asserted Count III in its capacity as an unsuccessful bidder. Ordinarily, "a disappointed bidder competing for a government contract does not have a special pecuniary interest in the award of [a] contract to it, and therefore generally lacks standing to challenge the award of the contract to another bidder." *Simmons*, 409 S.W.3d at 546 (citing *State ex rel. Johnson v. Sevier*, 98 S.W.2d 677, 679 (Mo. 1936); *State ex rel. Mid-Mo. Limestone, Inc. v. Cty. of Callaway*, 962 S.W.2d 438, 441-42 (Mo. App. W.D. 1998); *Metcalf & Eddy Servs., Inc. v. City of St. Charles*, 701 S.W.2d 497, 499 (Mo. App. E.D. 1985); *La Mar Constr. Co. v. Holt Cty., R-II Sch. Dist.*, 542 S.W.2d 568, 570-71 (Mo. App. 1976)). This is so because advertisements to bid are not offers of a contract, but are instead mere offers to receive proposals, and because statutes that require the award of government contracts to the lowest and best bidder are designed for the benefit and protection of the public, and not bidders. *Id.* (citing *Sevier*, 98 S.W.2d at 679).

However, we have recognized an exception to this general rule, concluding that a special pecuniary interest sufficient to support standing exists when bidding procedures do not permit an unsuccessful bidder to compete on equal terms, subjecting an unsuccessful bidder to a pecuniary loss by depriving the bidder of a fair opportunity to be awarded a contract. *Id.* at 546-47 (citing *Metro. Express Servs., Inc. v. City of Kansas City*, 23 F.3d 1367, 1371 (8th Cir. 1994)).

Here, although the Return to State provision in the State's RFP applied evenly to LS License and to License Office, and was not on its own determinative of the contract award, LS License persuasively argues that Return to State as a scored aspect of the procurement process cannot be viewed in isolation. LS License argues its bid would

10

have been structured differently in the absence of Return to State to maximize scoring for other components of the RFP. This could have permitted LS License to achieve a score that was higher than License Office's score. We agree that bid documents which require bidders to strategically structure bids or offers to receive scores in several categories do not present a "fair opportunity" to all bidders if one of the scored categories is an unlawful component of the procurement process. Thus, LS License has standing to assert Count III of the amended petition pursuant to the authority of *Simmons*.[10]

Moreover, LS License also asserts it has standing as the incumbent license fee office operator for the location that was the subject of the RFP. The State deems the services provided at this license fee office to be of an essential nature.[11] Thus, the result of the RFP was either going to be the cessation of LS License's business (because of the award of a contract to a different bidder), or the continuation of LS License's business under a new contract or on an emergent basis pursuant to section 34.045.[12] Although LS License has no right to preferential consideration as the incumbent license fee office operator, LS License nonetheless stands to suffer a direct and unique pecuniary loss if the State's RFP *unfairly* results in the cessation of its existing business operations. This fact distinguishes LS License's circumstances from those cases where the State retains the express right to reject all bidders. *Cf. La Mar*, 542 S.W.2d at 570 (holding that where a statute vests government entity with an absolute right to reject any and all bids, the

---

[10]In *Brannum v. City of Poplar Bluff*, 439 S.W.3d 825, 829-31 (Mo. App. S.D. 2014), the Southern District accepted *Simmons*'s analysis regarding the prospect of standing for an unsuccessful bidder. In *Byrne & Jones Enterprises, Inc. v. Monroe City R-1 School District*, No. ED101588, 2014 WL 5847596, at **2-6 (Mo. App. E.D. Nov. 15, 2014), the Eastern District criticized the Eighth Circuit's holding in *Metropolitan*, and concluded that *Simmons* and *Metropolitan* were wrongly decided. The Missouri Supreme Court accepted transfer of the *Byrne* case in February 2015, and the case remains pending.
[11]*See supra* note 7.
[12]*See supra* note 7.

request for bid creates no vested interest or property right in a rejected bidder). We thus conclude that under the peculiar facts of this case, although LS License is an unsuccessful bidder, it independently possesses a legally protectable interest as the current license fee office operator that will be directly and adversely impacted by the outcome of the State's RFP. *See Battlefield Fire Prot. Dist. v. City of Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997) (holding that when a party seeks declaratory or injunctive relief, standing is determined based on whether the party has a legally protectable interest); *Ste. Genevieve Sch. Dist. R-II v. Bd. of Alderman of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc. 2002) (holding that a legally protectable interest exists if a party is directly and adversely impacted by the action in question). Stated another way, LS License is not *per se* precluded from establishing an independent basis for standing merely because it is an unsuccessful bidder.

We conclude otherwise as to Williams. Williams asserted Count III in his capacity as "a taxpayer and resident" of Missouri. Beyond this bare assertion, there is no other explanation for Williams's purported standing in the amended petition. And there is no discussion of the subject at all in the motion for judgment on the pleadings that gave rise to the Judgment. "[T]he mere filing of a lawsuit does not confer taxpayer standing upon a plaintiff." *Manzara*, 343 S.W.3d at 659 (citing *E. Mo. Laborers*, 781 S.W.2d at 46). "Instead, a taxpayer must establish that one of three conditions exists: (1) a direct expenditure of funds generated through taxation; (2) an increased levy in taxes; or (3) a pecuniary loss attributable to the challenged transaction of a municipality." *Id.* (citing *E. Mo. Laborers*, 781 S.W.2d at 47). Williams had the burden of establishing that he had standing as a taxpayer to seek a declaration regarding the lawfulness of the Return to

12

State provision in the State's request for proposal and to seek a declaration voiding the contract awarded to License Office. *Id.* Williams has not sustained this burden. Because Williams did not sustain his burden to establish that he had standing to seek a declaration that the Return to State provision in the State's RFP was unlawful and resulted in the award of a contract to License Office that was void, the trial court had no authority to entertain his claim in Count III of the amended petition. *E. Mo. Laborers*, 781 S.W.2d 45-46 (holding that "unless the parties to the action have proper standing, a court may not entertain the action").

We now turn our attention to the merits of the Judgment in favor of LS License on Count III of the amended petition.

## Analysis

The State raises three points on appeal. Points one and two are addressed collectively as both challenge the trial court's conclusion that there is no statutory authority permitting inclusion of Return to State in the RFP. Point three challenges the trial court's alternative conclusion that Return to State is in conflict with section 136.055.

***The trial court erroneously concluded that there is no statutory authority permitting inclusion of Return to State in the State's RFP***

The trial court held that inclusion of Return to State in the State's RFP was unlawful because Return to State is not authorized by statute.[13] This conclusion is legally erroneous.

---

[13]Because some of the statutes referred to in our discussion were amended in 2015, we remind that ***all statutory references in this Opinion are to the version of the statute in effect at the time of the State's RFP***, unless otherwise noted. *See supra* note 1.

13

It is uncontested that Chapter 34 gives the State's commissioner of administration broad purchasing authority on behalf of the State. Section 34.030 provides that the commissioner of administration "shall purchase all supplies for all departments of the state, except as in this chapter otherwise provided." "Supplies" is defined by section 34.010.6 to "be deemed to mean, supplies, materials, equipment, contractual services, and any and all articles or things." Section 34.040 requires the commissioner of administration to employ competitive bid procedures where purchases will exceed stated monetary values. *See* sections 34.040.1 and .2.

The Chapter 34 bidding procedures include section 34.042, a provision which authorizes the use of "competitive proposals" in lieu of "competitive bidding." Section 34.042.3 provides that following a competitive proposal, "[t]he contract shall be let to the lowest and best offeror *as determined by the evaluation criteria established in the request for proposal* and any subsequent negotiations conducted pursuant to this subsection." (Emphasis added.)

The Chapter 34 bidding procedures also include section 34.050 which provides that "[t]he commissioner of administration shall make and adopt such rules and regulations, not contrary to the provisions of this chapter, for the purchase of supplies and prescribing the purchasing policy of the state as may be necessary." One such rule is 1 CSR 40-1.060, addressing vendor registration and notification of bidding opportunities. 1 CSR 40-1.060(5) authorizes the concept of "Return to State" as it provides:

The division[14] may include contract clauses requiring the awarded contractor to issue a payment to the state or the state's designee for a stated percentage as outlined in the contract.

Plainly, the inclusion of a Return to State provision in Chapter 34 State contracts is authorized by statute, as it is authorized by a rule lawfully promulgated pursuant to section 34.050.

We next determine whether State license fee office contracts are Chapter 34 State contracts. License fee offices are addressed in section 136.055. Section 136.055.1 provides that a person can be "selected or appointed by the state director of revenue as provided in subsection 2 of this section to act as an agent of the department of revenue, whose duties shall be the processing of motor vehicle title and registration transactions and the collection of sales and use taxes." Though section 136.055 does not cross-reference Chapter 34, the department of revenue is plainly a "department" of the State, and thus subject to the commissioner of administration's authority and obligation to "***purchase all supplies*** for all departments of the state, except as in this chapter otherwise provided." Section 34.030 (emphasis added). Thus, if the "selection or appointment" of license fee office agents constitutes the "purchase of supplies," then the process for doing so is subject to Chapter 34.

Pursuant to section 136.055.1, license fee office agents provide services for the department of revenue. We have already explained that the statutory definition of "supplies" is "deemed to [include] . . . contractual services." Section 34.010.6.

---

[14]The reference to the "division" is to the division of purchasing and material management. 1 CSR 40-1.030(1)(F). The commissioner of administration has delegated the responsibility for procurement of supplies, equipment and services for state departments to the division of purchasing and material management. 1 CSR 40-1.010(1).

Section 34.010.5 provides that "[t]he term 'purchase' as used in this chapter shall include the rental or leasing of any equipment, articles or things." This definition is crafted in an inclusive, and not an exclusive, manner, indicating the intent to sweep rental and lease arrangements into the otherwise commonly accepted meaning of the word "purchase." The commonly accepted meaning of the word "purchase" is to procure, obtain, or acquire by the payment of money or its equivalent. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1844 (1993); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1568-69 (2001).

Section 136.055.1 authorizes license fee office agents "to collect from the party requiring such services additional fees as compensation in full and for all services rendered [in statutorily authorized amounts]." Section 135.055.1. The contract services provided by license fee office agents is thus paid for through their authorized collection of fees from customers in lieu of receiving a payment for services directly from the State. The distinction, however, is one of form over substance. Whether license fee office agents are paid for their contract services directly by the State or through the collection of additional fees from consumers, the State is nonetheless procuring, obtaining, or acquiring the services of license fee office agents in exchange for the payment of money.

Because license fee office contracts involve the purchase of supplies for a department of the State as contemplated by Chapter 34, section 136.055 license fee office contracts are subject to the provisions of Chapter 34, including the competitive bidding procedures. Any doubt that might have earlier existed on this point was resolved by a 2009 amendment to section 136.055.2 when the General Assembly added a new subsection 2 which provides, in pertinent part, that "[t]he director of revenue *shall award*

*fee office contracts under this section through a competitive bidding process*."[15] (Emphasis added.) Consistent with this provision, and with the corollary provisions of Chapter 34, the State's RFP was a competitive proposal of the nature anticipated by section 34.042.1 which included "evaluation criteria" permitting determination of "lowest and best" offeror as anticipated by section 34.042.3. And the State's RFP was issued by the division of purchasing and materials management who has been delegated this authority by the commissioner of administration. *See* 1 CSR 40-1.010 *et seq*.

Because a rule lawfully promulgated pursuant to section 34.050 authorizes the inclusion of Return to State provisions in State contracts and because the State's RFP was issued pursuant and subject to Chapter 34, we conclude that the inclusion of a Return to State provision in the State's RFP was authorized by statute.

This conclusion should not be interpreted to mean that evaluation criteria identified in requests for proposals as relevant to determining the "lowest and best" bidder must be expressly authorized by statute. Section 34.042.3 provides that a "contract shall be let to the lowest and best offeror *as determined by the evaluation criteria established in the request for proposal* and any subsequent negotiations conducted pursuant to this subsection." (Emphasis added.) "Lowest and best" is defined by section 34.010.2 as permitting consideration of "cost, and other factors [which] may include, but not be limited to, value, performance, and quality of a product." Section

---

[15]Section 136.055.2 goes on to provide that "[t]he director of revenue *may* promulgate rules and regulations necessary to carry out the provisions of this subsection." (Emphasis added.) We have not located any rules or regulations promulgated by the director of revenue pursuant to this authority, and the State's Brief represents that no such rules have been promulgated. [Appellants' Brief, p. 24 n.1] Regardless, LS License does not disagree that the State's RFP was subject to compliance with the version of Chapter 34 in effect at the time of its issuance. Lending further clarity to this point is the General Assembly's 2015 amendment of section 34.040 to add new subsection .4 which provides in pertinent part that "[t]he director of the department of revenue *shall follow bidding procedures as contained in this chapter* and *may* promulgate rules necessary to establish such procedures." (Emphasis added.)

34.042.3 and section 34.010.2 plainly combine to permit the consideration of any factors deemed relevant by the State in determining the "lowest and best" bidder, so long as those factors are identified as "evaluation criteria" in a request for proposal and are not otherwise expressly prohibited from consideration by statute. It would be absurd to conclude that the legislature defined "lowest and best" to permit consideration of a broad array of generally described evaluation criteria, only to intend that "lowest and best" must be determined based solely on evaluation criteria that are expressly authorized by statute. Thus, although 1 CSR 40-1.060(5) happens to expressly authorize the inclusion of Return to State provisions in Chapter 34 State contracts, even in the absence of 1 CSR 40-1.060(5), Return to State would be an authorized evaluation criteria for determining "lowest and best" so long as it is identified as such in a section 34.042.1 request for proposal.[16]

The State's first and second points on appeal are granted.

### *The trial court erroneously concluded that the inclusion of Return to State in the State's RFP was in conflict with section 136.055*

The trial court also concluded that the inclusion of a Return to State provision in the State's RFP was unlawful because it was in conflict with section 136.055. This conclusion is legally erroneous.

The trial court's holding requires us to interpret section 136.055. "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." *In re Verified Application &*

---

[16]We discuss, *infra*, that section 34.040 was amended in 2015 to add section .4 which now prohibits the scoring of Return to State as an evaluation criteria in requests for proposal seeking to award license fee office contracts. However, this statutory provision was not in effect at the time of the State's RFP.

18

*Petition of Liberty Energy (Midstates) Corp.*, 464 S.W.3d 520, 524 (Mo. banc 2015). Section 136.055 does not expressly prohibit Return to State in license fee office contracts. However, LS License argues that section 136.055.1 is nonetheless in conflict with Return to State because it provides, in pertinent part, as follows:

> Any person who is selected or appointed by the state director of revenue . . . to act as an agent of the department of revenue . . . ***shall be authorized to collect from the party requiring such services additional fees as compensation in full and for all services rendered*** [in the amounts thereafter expressed in the statute].

(Emphasis added.) LS License argues that because a Return to State provision anticipates returning some portion of collected fees to the State, it is in conflict with the highlighted language in section 136.055.1 which assures a license fee office agent will be fully compensated by collected fees. We disagree.

First, the highlighted language plainly addresses only the ***collection*** of fees as compensation in full for services rendered, and not the retention or use of collected fees. Only "[w]here the language of [a] statute is ambiguous or where its plain meaning would lead to an illogical result," will this court "look past the plain and ordinary meaning of a statute." *Nichols v. Dir. of Revenue*, 116 S.W.3d 583, 586 (Mo. App. W.D. 2003). The highlighted language is not ambiguous. And the plain meaning of the highlighted language does not lead to an illogical result merely because collected fees are later used by a license fee office agent to pay Return to State. Return to State provisions affect all Chapter 34 State contract vendors identically. Every State vendor who agrees to a Return to State provision is agreeing to pay some portion of that vendor's "profits" or "receipts" to the State.

19

Second, another provision of section 136.055 supports the conclusion that Return to State is not in conflict with section 136.055.1. In 2009, the General Assembly amended Section 136.055 to add subsection .3 as follows: "All fees collected by a tax-exempt organization may be retained and used by the organization." This new subsection expressly addresses the *retention* of collected fees. In contrast, section 136.055.1 is silent on the subject of retention or use of collected fees. If section 136.055.1 is read to imply that all license fee office agents have the right to retain collected fees, the specific discussion of this subject in the context of tax-exempt organizations in section 136.055.3 would be rendered superfluous. It is "presumed that the legislature did not insert idle verbiage or superfluous language in a statute." *Hyde Park Hous. P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993). Moreover, if section 136.055.1 is read to imply that all license fee office agents have the right to retain collected fees, we would be interpreting section 136.055.1 in a manner that disregards the General Assembly's demonstrated ability to address the subject of retention of collected fees when it desires to do so. *Fred Weber, Inc. v. Dir. of Revenue*, 452 S.W.3d 628, 631 (Mo. banc 2015) (noting that General Assembly has demonstrated its ability to exempt certain activities from taxation such that its absence to do so is indicative of its intent not to do so).

Third, section 136.055.4 provides that "[a]ll fees charged shall not *exceed* those in this section." (Emphasis added.) Thus, though the stated fees in section 136.055.1 represent the maximum limits that can be charged for specified services, a contractor is not prohibited from agreeing to accept a lower fee--whether from a consumer, or indirectly through Return to State. In light of section 136.055.4, we do not read section 136.055.1's authorization to collect fees "as compensation in full and for all services

rendered" to mean that a contractor is guaranteed revenues in the amount of authorized fees, but rather to mean only that a contractor will have no other right or claim to compensation beyond statutorily authorized fees.

Fourth, we have already concluded that the inclusion of Return to State provisions in State contracts is expressly authorized by 1 CSR 40-1.060(5), promulgated pursuant to the authority of section 34.050, and that even without this rule, consideration of Return to State as a section 34.042.3 evaluation criteria is permissible given the broad statutory definition of "lowest and best." Section 34.010.2. The plain language of section 136.055.1 is harmonious with 1 CSR 40-1.060(5), section 34.042.3, and section 34.010.2. Yet, were we to construe section 136.055.1 as suggested by LS License, we would be creating a conflict between statutory provisions that are otherwise harmonious. Statutory provisions are "not read in isolation but [are] construed together, and if reasonably possible, the provisions will be harmonized with each other." *Bachtel v. Miller Cty. Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003). It would be incongruent with this bedrock principle of statutory construction to engraft unexpressed language into section 136.055.1 when doing so would operate to create a conflict with other statues.

Finally, though LS License contends that Return to State is in conflict with section 136.055.1, the General Assembly amended section 34.040 in 2015 in a manner that indicates to the contrary. The General Assembly amended section 34.040 in 2015 to add new subsection .4 as follows:

> The director of the department of revenue shall follow bidding procedures as contained in this chapter and may promulgate rules necessary to establish such procedures. ***No points shall be awarded on a request for proposal for a contract license office to a bidder for a return-to-the-state provision offer***.

21

(Emphasis added.) The highlighted language does not declare Return to State provisions in license fee office contracts, bid solicitations, or requests for proposal, to be unlawful. The highlighted language simply provides that *offers* from bidders to include a Return to State provision in a license fee office contract cannot be a *scored* evaluation criteria in determining who is the "lowest and best" bidder pursuant to section 34.040.3 (RSMo. 2015).[17] Whatever practical effect newly enacted section 34.040.4 may have on the inclusion of Return to State provisions in future license fee office contracts, the newly enacted section necessarily reflects the General Assembly's recognition that the inclusion of Return to State provisions in State contracts is authorized and lawful.

The trial court's conclusion that the inclusion of a Return to State provision in the State's RFP was unlawful because it conflicts with section 136.055 is legally erroneous.

The State's third point on appeal is granted.

## Conclusion

The trial court's Judgment in favor of LS License and Williams is reversed and vacated because Williams did not sustain his burden to establish standing to assert Count

---

[17]Arguably, the 2015 amendment adding new subsection 34.040.4 may simply have reflected the General Assembly's continuing efforts to show priority to tax-exempt organizations in the license fee office competitive bidding process. Amendments to section 136.055 reinforce this belief. Following an amendment in 2009, section 136.055.2 required license fee office contracts to be awarded pursuant to a competitive bid process and provided that "[t]he competitive bidding process shall give priority to organizations and entities that are exempt from taxation under Section 501(c)(3) or 501(c)(6) of the Internal Revenue Code of 1986, as amended . . . ." In the same 2009 amendment, section 136.055.3 was added to expressly authorize tax-exempt organizations to retain and use all fees collected. Following an amendment in 2015, section 136.055.2 enhanced the priority to be shown to tax-exempt organizations by requiring "special consideration . . . to those [tax-exempt] organizations and entities that reinvest a minimum of seventy-five percent of the net proceeds [of license fee office contracts] to charitable organizations in Missouri." When section 34.040.4 was adopted in 2015 to eliminate Return to State as a scored item in license fee office requests for proposals, the General Assembly may simply have been responding to the fact that tax-exempt organizations could not at the same time use the majority of collected fees for charitable purposes while also voluntarily offering Return to State in order to submit a competitive bid for a license fee office contract.

III of the amended petition and because the trial court's conclusions of law are legally erroneous.[18]

 *Cynthia L. Martin*
_____
 Cynthia L. Martin, Judge

All concur

---

[18]We were not asked to remand this case to permit the trial court to consider the counts dismissed in the Judgment as moot. *See* Rule 84.04(a)(6). Even had we been, we cannot say that remand would have been authorized. Whether a trial court can dismiss some counts in a petition as moot in order to generate a final judgment on other counts with the expectation that reversal on appeal will resurrect the dismissed counts is an issue of first impression that implicates the finality of judgments; the appealability of judgments resolving less than all issues in a case; the obligation to cross-appeal; and other related principles.