

# In the
# Missouri Court of Appeals
## Western District

WORLD WIDE TECHNOLOGY, INC.,

      Appellant,

v.

OFFICE OF ADMINISTRATION, STATE OF MISSOURI AND DIVISION OF PURCHASING AND MATERIALS MANAGEMENT, OFFICE OF ADMINISTRATION, STATE OF MISSOURI,

      Respondents;

SHI INTERNATIONAL CORP.,

      Respondent.

WD81815

OPINION FILED:

APRIL 9, 2019

---

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon Edward Beetem, Judge**

**Before Division Three: Mark D. Pfeiffer, Presiding Judge, Lisa White Hardwick, Judge,**
**Anthony Rex Gabbert, Judge**

World Wide Technology, Inc. (World Wide) appeals the circuit court's Judgment dismissing its Petition for Declaratory Judgment and Injunctive Relief against Missouri's Division of Purchasing and Materials Management Department of the Office of Administration. On appeal, World Wide contends the circuit court, 1) erred in refusing to grant World Wide's application for change of judge, 2) erred in denying World Wide's alternative post-trial motion for leave to amend,

3) erred in dismissing Counts I, II, III, and VII in that World Wide adequately alleged that the Request for Proposals contained unlawful criteria that rendered the entire Request for Proposals unfair, 4) erred in dismissing the First Amended Petition on the ground World Wide waived its claims, 5) erred in dismissing Count I of the First Amended Petition because Count I stated a claim, 6) erred in dismissing Counts II and VII because both stated a claim, 7) erred in dismissing Count III because Count III stated a claim, and 8) erred in dismissing Count V because Count V stated a claim.[1]  We affirm.

**Factual and Procedural History**

World Wide is a Missouri corporation that provides technology solutions to public and private entities.  World Wide previously held a contract with Missouri's Office of Administration to provide PC Prime Vendor Services, which permitted state agencies to purchase computer hardware, software, software maintenance, and related services from World Wide on an as-needed basis.  World Wide's contract expired March 31, 2018.

On June 28, 2016, the Office of Administration (OA) and Division of Purchasing and Materials Management ("Defendants" collectively) issued a Request for Proposals (RFP) to award a PC Prime Vendor Services contract to replace the one held by World Wide when it expired. Defendants subsequently issued six addenda to the RFP.  The RFP specified the manner in which proposals would be evaluated, identified a point based system, and described how points would be applied.  The RFP also provided Instructions for Submitting a Solicitation Response.[2]  Included in the Instructions were provisions stating that it was the vendor's responsibility to advise the

---

[1] All statutory references are to the Revised Statutes of Missouri as supplemented through 2018 unless otherwise noted.

[2] These instructions were not amended in the addenda.

2

Division of Purchasing if the vendor believed anything within the RFP violated state or federal law or regulations; all issues were to be raised no later than ten days prior to the due date of the proposals. The final date for submitting proposals was August 23, 2016. World Wide raised no issues of concern prior to submitting its proposal.

Three offerors responded to the RFP: World Wide; SHI International Corp. (SHI), a New Jersey Company; and Technology Group Solutions, LLC (TGS), a Kansas Company. After receiving the proposals, Defendants entered Best and Final Offer (BAFO) negotiations with the offerors. Defendants issued a total of eight BAFO requests. Following BAFO negotiations, Defendants evaluated the proposals and awarded the contract to SHI on February 9, 2018.

On February 26, 2018, World Wide issued a bid protest letter to Defendants. Therein, World Wide claimed that the method OA used to calculate and award Minority Based Enterprise (MBE)/Women Based Enterprise (WBE) points was an unpromulgated rule, OA's method of calculating MBE/WBE points was unlawfully based on a superseded executive order rather than a current regulation, the cost evaluation method OA used was an unpromulgated rule, OA's cost analysis formula resulted in an arbitrary and capricious cost evaluation, OA failed to give preference to World Wide as a Missouri company as required by law, OA's evaluation of the offerors' references was unlawful, arbitrary, and capricious, and OA's award to SHI of full points for its "Method of Performance" was arbitrary and capricious. Four days later, on March 2, 2018, World Wide filed a Petition for Declaratory Judgment and Injunctive Relief seeking judicial review pursuant to Section 536.150, a declaratory judgment that any contract awarded SHI was void, and a permanent injunction barring Defendants from entering any contract resulting from the procurement. A judge was assigned that same date.

On March 15, 2018, World Wide moved for a preliminary injunction to prevent OA from taking any further steps to implement the contract awarded to SHI, arguing that World Wide would suffer immediate and irreparable injury in the absence of such relief as the awarded contract was set to begin April 1, 2018, and "every day that the state is not ordered to re-bid the contract using lawful process is another day that World Wide does not have the opportunity to bid for the work." World Wide gave notice of a March 22, 2018, hearing on World Wide's Motion for Preliminary Injunction, but later withdrew that notice. On March 20, SHI moved to intervene and filed notice that a hearing on that motion would be held March 30, 2018. On March 27, 2018, World Wide filed a First Amended Petition. On March 30, 2018, the hearing on SHI's motion to intervene was held and SHI's motion was granted. Both OA and SHI filed motions to dismiss, and argument for those motions was scheduled for April 13, 2018; a bench trial on World Wide's petition was scheduled for May 18, 2018.

On April 12, 2018, World Wide filed Suggestions in Opposition to the State Defendants' Motion to Dismiss, or, in the Alternative, Motion for Leave to Amend. On April 13, 2018, a hearing was held on the motions to dismiss. The parties presented argument and the court took the matter under advisement. On April 16, 2018, World Wide filed an Application for Change of Judge under Rule 51.05.

On April 19, 2018, the circuit court entered an Order and Judgment dismissing World Wide's First Amended Petition with prejudice. Therein, the court concluded that World Wide's Application for Change of Judge came three days after the pending Motions to Dismiss were argued, submitted, and taken under advisement, and the application had not been noticed for presentment under Rule 51.05. The court found that the application did not preclude the court from ruling on matters already submitted.

4

On April 23, 2018, World Wide filed Notice of Presentation of Application for Change of Judge, therein stating that the previously filed application would be presented April 27, 2018. On April 26, 2018, World Wide filed a Motion for Reconsideration or, in the Alternative, Motion for Leave to File Second Amended Petition. On April 27, 2018, the court denied World Wide's Application for Change of Judge. The court set World Wide's Motion for Reconsideration for a May 17, 2018, hearing. On May 30, 2018, the court denied the motion. This appeal follows.

Given the issues before us, we deem it most logical to address World Wide's points in the following order: I (Change of Judge), III (Standing), V-VIII (Failure to State a Claim), IV (Waiver), and II (Leave to Amend).

**Point I – Application for Change of Judge**

In its first point on appeal, World Wide contends the circuit court erred in refusing to grant World Wide's Application for Change of Judge and entering Judgment for Defendants. World Wide argues that it filed a timely application, leaving the trial court with no authority to take any action but grant the application.

We review *de novo* the trial court's legal conclusions and its application of law to the facts. *Zweig v. Metropolitan St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013). The timeliness of World Wide's Application for Change of Judge under Rule 51.05 is a question of law. *In re S.M.H.*, 160 S.W.3d 355, 359 (Mo. banc 2005).

Rule 51.05(a) provides that "[a] change of judge shall be ordered in any civil action upon the timely filing of a written application therefor by a party." Pursuant to Rule 51.05(b), the application must be filed within sixty days from service of process, or thirty days from the designation of the trial judge, whichever time is longer. If the designation of the trial judge occurs less than thirty days before trial, the application must be filed prior to any appearances before the

trial judge. *Id.* This rule grants "the absolute right to disqualify a judge once without cause or any showing of prejudice." *State ex rel. Manion v. Elliott*, 305 S.W.3d 462, 464 (Mo. banc 2010). "'Only motions that are taken under submission before the application for change of judge is filed may be ruled upon by that judge.'" *Charron v. Missouri Bd. of Probation and Parole*, 373 S.W.3d 26, 28 (Mo. App. 2012) (quoting *Miller v. Mauzey*, 917 S.W.2d 633, 635 (Mo. App. 1996)); *See also Burgett v. Thomas*, 509 S.W.3d 840, 846 (Mo. App. 2017).

Citing *State ex rel. Cohen v. Riley*, 994 S.W.2d 546 (Mo. banc 1999), World Wide argues that Rule 51.05 cannot be interpreted to allow rulings on matters under submission after an application for change of judge because parties have a right to an impartial judge, and a party will have no reason to believe a judge is partial or prejudiced until arriving to argue a substantive matter and hear what the judge has to say about the case. World Wide argues that *Jenkins v. Andrews*, 526 S.W.2d 369 (Mo. App. 1975), and its progeny should be abandoned in light of *Riley*. We disagree.

*Riley* involved a request for change of judge *after* the court issued a preliminary injunction. 994 S.W. 2d at 547. The issue in *Riley* was not whether the court had authority to rule on pending matters under submission, but whether the hearing on the application for preliminary injunction constituted a "trial" implicating Rule 51.05(b)'s provision that, "[i]f the designation of the trial judge occurs less than thirty days before trial, the application (for change of judge) must be filed prior to any appearance before the trial judge." *Id.* at 548. Our Supreme Court held that, generally, a hearing on a preliminary injunction is not a trial on the merits and, specifically, the trial court in

6

*Riley* had not consolidated the hearing of the application for preliminary injunction with the trial on the merits under Rule 92.02(c)(3). *Id.* at 548-549.[3]

*Jenkins* involved denial of a Rule 51.05 request for change of judge after the court took a motion for summary judgment under submission. On appeal we stated:

> In this case, the motion for summary judgment and to dismiss had been taken up by the court. Evidentiary material, in the form of transcript of other causes and depositions, had been submitted in connection with the motion for summary judgment. The motion had been fully argued by both sides. … To permit appellants to disqualify the judge … would nullify the hearing which had been held, result in a duplication of the proceeding already undertaken and permit appellants to take advantage of a tentative expression of opinion by the trial judge on the matter submitted to avoid his action upon it. Such result is not required by Rule 51.05. … [T]he action of the trial court in ruling on the motion previously submitted before acting on the disqualification was not error.

*Jenkins*, 526 S.W.2d at 373.

Here, Defendants' motions to dismiss were argued and taken under submission. As such, the court had authority to rule on the issues therein, as well as World Wide's subsequent motion to reconsider the court's ruling. After the ruling, there was no case to transfer to another judge because World Wide's First Amended Petition was dismissed. As such, denial of World Wide's Application for Change of Judge was not in error.

World Wide's first point on appeal is denied.

## Point III – Standing

In its third point on appeal, World Wide contends the circuit court erred in dismissing Counts I, II, III, and VII of its First Amended Petition on the grounds World Wide had no standing.

---

[3] We note that, although we find no cases authored by our Missouri Supreme Court addressing this specific issue, Rule 51.05 went into effect one month after *Jenkins* was decided and has been amended eight times since (six times prior to *Riley* and twice after). Nothing within the amendments suggests an intent to overrule *Jenkins*. World Wide's concern that a party be allowed a change of judge when the presiding judge exhibits bias or partiality is addressed by Rule 51.05(d) which states that no party shall be precluded from requesting any change of judge for cause.

World Wide argues that it adequately alleged that the RFP contained unlawful criteria that rendered the entire RFP unfair.

> Standing is a question of law, which is reviewed *de novo*. Regardless of an action's merits, unless the parties to the action have proper standing, a court may not entertain the action. To have standing, the party seeking relief must have a legally cognizable interest and a threatened or real injury. When seeking declaratory relief, a legally protectable interest exists if the plaintiff is directly and adversely affected by the action in question. The party seeking relief has the burden of establishing that they have standing. …

> Ordinarily, a disappointed bidder competing for a government contract does not have a special pecuniary interest in the award of a contract to it, and therefore generally lacks standing to challenge the award of the contract to another bidder. This is so because advertisements to bid are not offers of a contract, but are instead mere offers to receive proposals, and because statutes that require the award of government contracts to the lowest and best bidder are designed for the benefit and protection of the public, and not bidders.

> However, we have recognized an exception to this general rule, concluding that a special pecuniary interest sufficient to support standing exists when bidding procedures do not permit an unsuccessful bidder to compete on equal terms, subjecting an unsuccessful bidder to a pecuniary loss by depriving the bidder of a fair opportunity to be awarded a contract.

*Lee's Summit License, LLC v. Office of Administration*, 486 S.W.3d 409, 416-417 (Mo. App. 2016) (internal quotation marks and citations omitted). Bid documents requiring bidders to strategically structure bids or offers to receive scores in several categories do not present a fair opportunity to all bidders if one of the scored categories is an unlawful component of the procurement process. *Id.* at 417.

We find that, although World Wide contends on appeal it alleged that unlawful criteria

within the RFP rendered the entire process unfair, this was not stated in World Wide's petition.[4] Counts I, II, III, and VII of World Wide's First Amended Petition allege, respectively, I) Defendants' use of unpromulgated rules in evaluating bids and awarding a contract violated Section 34.050, resulting in a void contract, II) the RFP's method for calculating MBE/WBE participation was unlawful, arbitrary, and capricious because Defendants failed to follow the law in calculating those participation points, resulting in a void contract, III) the RFP's cost formula awards points unreasonably, arbitrarily, and capriciously by failing to use a baseline number, resulting in a void contract, and VII) Defendants established individual contract percentages for MBE/WBE participation in violation of regulations, resulting in a void contract.

Our Missouri Supreme Court has stated that an unsuccessful bidder only "has standing to challenge the award of a public contract to another bidder on grounds that it was denied a fair and equal opportunity to compete in the bidding process." *Byrne & Jones Enterprises, Inc. v. Monroe City R-1 School District*, 493 S.W.3d 847, 854 (Mo. banc 2016). There are no allegations within World Wide's First Amended Petition that the bid process denied World Wide a fair and equal opportunity to compete, gave other bidders an advantage, or was otherwise unjust. With no allegations of unfair process, or that World Wide was directly and adversely affected by the

---

[4] Although Count IV of World Wide's First Amended Petition alleged Defendants failed to treat SHI and World Wide equally in evaluating their references, World Wide has abandoned all claims regarding Count IV. Footnote 4 of World Wide's appeal brief states: "WWT dropped Counts IV and VI of the First Amended Petition in its proposed Second Amended Petition and does not seek review of their dismissal." Count VI of World Wide's petition alleged that SHI's proposal was non-responsive in one category and because Defendants cannot accept a non-responsive proposal, Defendants' award of the contract to SHI was unlawful. As World Wide has abandoned all claims regarding Count IV and Count VI, we ignore these counts when discussing the First Amended Petition.

process, the petition insufficiently alleged standing in Counts I, II, III, and VII.[5]

World Wide's third point on appeal is denied.

## Points V – VIII – Failure to State a Claim

In World Wide's fifth through eighth points on appeal, World Wide contends the trial court erred in concluding World Wide failed to state claims in Counts I, II, III, V, and VII. As we have determined World Wide had no standing to bring Counts I, II, III, and VII, we need not review these points. Count V (Point VIII) remains unaddressed.

A "motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo. banc 2002). We "determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Smith v. Humane Soc'y of U.S.*, 519 S.W.3d 789, 798 (Mo. banc 2017).

In Count V, World Wide alleged that Defendants violated the procurement requirements established in law by failing to give World Wide preference as a Missouri company under Sections 34.070 and 34.073, thereafter awarding the contract to an out of state company. World Wide alleged that, although the RFP "allowed Defendants to consider the offerors' economic impact to Missouri, the RFP did not provide a meaningful way to give Missouri companies a preference." Yet, Sections 34.070 and 34.073 state that preference to a Missouri company is only required when

---

[5] *Compare Lee's Summit License, LLC v. Office of Administration*, where the losing bidder alleged, among other things, that the RFP gave the opposing bidder an unfair competitive advantage and argued that bidder would have structured the bid differently in the absence of a particular provision that the trial court ultimately found unlawful. 486 S.W.3d at 414-415; *See also*, *Public Communications Services, Inc. v. Simmons*, 409 S.W.3d 538 (Mo. App. 2013), where the losing bidder alleged the contract was wrongfully awarded because the awarding entity did not evaluate the price or quality of services of the winning bidder, and failed to give other bidders a fair opportunity to also bid on those services.

the quality of performance or goods promised is equal or better, and the price quoted is the same or less. *Id.* Preference *may* also be given when "competing bids, in their entirety, are comparable." World Wide's Count V failed to state a claim because World Wide made no claim that the prices quoted were equal to or better than those of SHI, and the exhibits filed with World Wide's petition show that World Wide's cost proposal overall was the highest of the three bidders.

World Wide's fifth through eighth points on appeal are denied.

### Point IV – Waiver

World Wide argues in its fourth point that the trial court erred in dismissing its First Amended Petition on the grounds that World Wide waived its claims by not challenging the RFP before the proposal submission deadline. World Wide contends that this conclusion was based on matters outside the pleadings and is factually and legally erroneous. World Wide argues that it could not have known it had claims until the RFP process was complete and the contract awarded. As we have determined World Wide had no standing to bring Counts I, II, III, and VII, and failed to state a claim in Count V, we need not review this point.

World Wide's fourth point on appeal is denied.

### Point II – Leave to Amend

In World Wide's second point on appeal, World Wide contends the circuit court abused its discretion in denying its motion for leave to amend. World Wide argues that it suffered hardship through dismissal of its claims, the proposed amendments addressed alleged deficiencies in World Wide's pleadings, its request was timely, and Defendants and SHI would not have been prejudiced.

We review a trial court's denial of leave to amend for abuse of discretion. *Eckel v. Eckel*, 540 S.W.3d 476, 487 (Mo. App. 2018). "Judicial discretion is abused when the court's ruling is clearly against the logic of the circumstances presented to the court and is so unreasonable and

arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (internal quotation marks and citations omitted). "Whether to allow the amendment of a pleading is at the discretion of the trial court and this court will not disturb its decision absent an obvious and palpable abuse of discretion." *St. Anthony's Medical Center v. H.S.H.*, 974 S.W.2d 606, 612 (Mo. App. 1998) (internal quotation marks and citations omitted). Factors we consider in making this determination include: (1) hardship to the moving party if leave is denied; (2) the moving party's reasons for omitting the matter from the original pleading; (3) timeliness of the application; (4) whether inadequacy of the moving party's pleading would be cured; and (5) injustice resulting to the nonmoving party if leave were granted. *Id.*

> The recognized function of the amendment rule is to enable a party to present evidence that was overlooked or unknown at the time that the original pleading was filed without changing the original cause of action.... There is no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed.

*Eckel*, 540 S.W.3d at 488 (quoting *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 258 (Mo. App. 2012).

Pursuant to Rule 55.33(a), a pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if no response is required and the action has not been set for trial, within thirty days after it is served. Otherwise, the pleading may only be amended by leave of court or written consent of the adverse party. *Id.* "[L]eave shall be freely given when justice so requires." *Id.* Rule 67.06 provides that, on sustaining a motion to dismiss a claim, the court shall freely grant leave to amend.

Defendants moved to dismiss World Wide's First Amended Petition on grounds of lack of standing and failure to state claims; Defendants made articulated supporting arguments in their Suggestions in Support. World Wide's April 12, 2018, motion for leave to amend in response to

12

these articulated arguments was that World Wide had sufficiently stated claims and dismissal was unwarranted, but if the court determined World Wide had not pled sufficient facts to state claims, World Wide should then be allowed to amend its petition.

World Wide's motion for leave to amend (filed after the court's dismissal of the First Amended Petition) alleged: (1) denial of the right to amend would end in hardship to World Wide because their First Amended Petition was dismissed with prejudice, (2) the proposed Second Amended Petition included an allegation regarding a 1% administrative fee payable to the state World Wide learned at an April 11, 2018, deposition and World Wide would have structured its bid differently if not for the 1% administrative fee, with no other new matters included but further factual detail to support World Wide's counts, (3) World Wide's motion for leave to amend was timely (4) the proposed amendment to the First Amended Petition cures any defects in the previous pleading by alleging additional facts which show World Wide's standing to bring the claims, and (5) leave to amend would cause no injustice to Defendants because the suit was in preliminary stages.

In World Wide's proposed Second Amended Petition, World Wide incorporated the 1% administrative fee allegation into Count I, which otherwise alleged that Defendants violated the procurement requirements established in law by applying unpromulgated rules in awarding the contract. World Wide added language stating that, if Defendants had used different formulas, rules, and had not included the 1% fee requirement, World Wide would have structured its bid differently. Further, use of unpromulgated rules resulted in unfair treatment to World Wide and "Defendants' failure to follow Missouri law resulted in World Wide structuring its proposal strategically to comply with the unlawful rules and resulted in World Wide's failure to be awarded the contract."

We find that the 1% administrative fee was part of the bid process and World Wide was aware of this fact when filing its First Amended Petition. The RFP attached as Exhibit 1 to World Wide's petition contains this information at section 3.19 titled "Missouri Statewide Contract Quarterly Administrative Fee." The bid submitted by World Wide and attached to its petition as Exhibit 2, Part 1, addresses this administrative fee and states: "WWT understands and complies with this requirement."

In Count II of World Wide's proposed Second Amended Petition, World Wide added additional language to its allegation that Defendants improperly calculated MBE/WBE participation points. The general allegation, in both petitions, was that Defendants used an outdated percentage (5% rather than 10%) to award points for WBE participation. Further, although 10% was correctly used for MBE's, because the wrong percentage was used for WBE participation, these two were not treated equally by Defendants although they should have been under the law. While both petitions allege that, because Defendants failed to use the proper criteria the method of calculation was unreasonable, arbitrary, and capricious, the Second Amended Petition further alleged that, had Defendants used the proper WBE percentage, World Wide would have submitted a different proposal.

The record before the court, however, was that the regulation relied on by World Wide states that 10% WBE participation is a "program goal," and "[t]hese ten percent (10%) goals do not authorize or require the division to set M/WBE individual contract percentages at the ten percent (10%) level, or at any particular level[.]" Further, "The division may establish individual contract percentages … [and] individual contract percentages may be set lower in areas where availability of M/WBEs has been demonstrated to be lower." The record further shows that altering the percentages would have, if anything, been detrimental to World Wide's rating because

14

SHI was 100% certified MBE and 100% certified WBE, whereas World Wide represented it had only 5% WBE participation. World Wide's Second Amended Petition avoids this fatal reality contending only that World Wide would have submitted a different proposal without alleging that a different percentage would have beneficially altered the outcome for World Wide.

Count III of World Wide's proposed Second Amended Petition is nearly identical to Count III of the First Amended Petition which alleged that the "cost formula" awarded points unreasonably, arbitrarily, and capriciously because it did not use a baseline number unrelated to the calculation of all offerors in order to compare the calculations of the proposals. The Second Amended Petition added additional allegations that Defendants were "aware that a formula using a baseline is a reasonable formula" and "[b]ecause the state did not establish a baseline price, the state awarded SHI cost points it should not have received because SHI's bid was unreasonably low and will not allow a reasonable offeror to perform the contract in the manner required by the state." Again, World Wide was aware of the cost formula used by Defendants prior to bidding on the contract. If World Wide believed SHI's bid was unreasonably low causing failure to use a baseline number to prejudice World Wide, this was known to World Wide when World Wide filed its First Amended Petition.

We find that, while the language added in the proposed Second Amended Petition attempts to shoehorn the allegations into a case comparable to *Lee's Summit License*,[6] we cannot say the court abused its discretion in denying the motion for leave to amend where all of World Wide's proposed Second Amended Petition claims were known to World Wide both prior to submitting a proposal under the terms of the RFP, and prior to filing its First Amended Petition.

---

[6] 486 S.W.3d at 417.

Point two is denied.

## Conclusion

We conclude that the circuit court did not abuse its discretion in denying World Wide's Application for Change of Judge, did not err in concluding World Wide had no standing to bring Counts I, II, III, and VII, did not err in concluding World Wide failed to state a claim in Count V, and did not abuse its discretion in denying World Wide's request for leave to amend.

We affirm the circuit court's judgment.

_____<br>
Anthony Rex Gabbert, Judge

All concur.